WILLIAM S. ROUSE v. SHADE WOOTEN and J. W. ISLER.

*Lien, Agricultural and Laborer's — Contract — Landlord — Cropper.*

While one who labors in the cultivation of a crop, under a contract that he shall receive his compensation from the crops when matured and gathered, has no estate or interest in the land, but is simply a laborer—at most a cropper—his right to receive his share is protected by the statute (*The Code,* §§ 1754, 1757), which, for certain purposes, creates a lien in his favor, and which will be enforced against the employer or landlord, or his assigns, and which has precedence over agricultural liens made subsequent to his contract. but before the crop is harvested.

This is a CIVIL ACTION, which was tried before *Bynum, J.,* at August Term, 1889, of LENOIR Superior Court.

The plaintiff alleged that the cotton and rice in controversy were delivered and belonged to him as his share of the crop produced on his father's farm in the year 1888, which he helped to cultivate. He further alleged that the defendants got possession of and converted the same to their own use, &c.

The defendants denied such allegations, and alleged that the property belonged to them; that they acquired title to the same by virtue of their "agricultural lien," duly registered, executed on the 16th day of May, 1888, to secure money and supplies furnished to the plaintiff's father to enable him to make his crop of that year.

On the trial of the issues raised by the pleadings, the plaintiff testified, in part, as follows:

"I am twenty-three years old, and stay at my father's; stayed there during the year 1888; ate at his table and worked on his farm. My father was to give me one-fourth of the crop for my work on his farm during that year. The contract was entered into between my father and myself

about January 1, 1888. My father furnished the land, the team, supplies, and a portion of the labor. I was to work myself and to receive one-fourth of the crop grown. I worked until the crop was laid by; I then went to school some, but paid for one-fourth of the work of housing the crop, it being the agreement that I was to supply a hand in my absence  My father gave a lien-bond to defendants that year; heard him say he did. We made the contract and I commenced work before the lien-bond was given."

J. L. Rouse testified: "I am father of plaintiff, and own the land on which the rice in controversy was raised. The plaintiff worked with me in 1888. About the first of January, 1888, I hired my son, the plaintiff, to work. He proposed to work for so much money. I told him the land might or might not make a crop; so I agreed to give him one-fourth of the crop for his labor on it. This contract with my son was entered into before I gave the lien-bond to defendants. After crop was made, I delivered to plaintiff one bale of cotton, which was one-fourth of cotton raised, and also set aside to him his part of the rice—twenty-six sacks—which were put in a crib in my yard."

The defendants, among other things, requested the Court to instruct the jury as follows:

"An agreement, before beginning cultivation, to give a portion of the crop to him who labors thereon, is executory, and, if the land-owner, before maturity of the crop, executes an agricultural lien for advancements to carry on and raise said crop, then the property in the crop vests in the lienee, and the laborer is left to an action for damages against the landlord."

The Court declined to give such instructions, and the defendants excepted. There was a verdict and judgment thereupon for the plaintiff, from which the defendants appealed.

*Mr. George Rountree,* for the plaintiff.
*Mr. N. J. Rouse,* for the defendants.

MERRIMON, C. J.—after stating the case: The plaintiff had
no estate in the land of his father, as his tenant, and, hence,
no vested property interest in the crop produced on his farm
of the year 1888, until the same was matured and gathered
and part thereof set apart to him as his share. The crop
was not his; he was simply a laborer employed in helping
to produce it, in his father's service, with an agreement
whereby he was to receive a part of the crop, when gathered,
as his hire. The evidence of both the plaintiff and his
father goes to show that the former did not lease or intend
to lease the land; he did not agree to pay rent of any kind.
On the contrary, he was to receive compensation—not in
money, but by taking part of the crop. At most, he was
simply a "cropper."

In *Harrison* v. *Ricks,* 71 N. C., 7, it is said: "A cropper
has no estate in the land; that remains in the landlord.
Consequently, although he has, in some sense, the possession
of the crops, it is only the possession of a servant, and is, in
law, that of the landlord. The landlord must divide off to
the cropper his share. In short, he is a laborer receiving pay
in a share of the crop." To the like effect, is *Hudgins* v.
*Wood,* 72 N. C., 256; see, also, *McNeeley* v. *Hart,* 10 Ired., 63;
*Brazier* v. *Ansley,* 11 Ired., 12.

Nevertheless, the statute (*The Code,* §§ 1754. 1757), in a
measure, protects the right of such cropper to such part of
the crop as he may be entitled to have, by virtue of his
agreement, oral or written, with the lessor, landlord or other
person on whose farm he agrees to serve, and does serve, as
such cropper, in the cultivation and production of the crop.
The statute does not, in express terms, give and secure to
him a lien upon the crop, but it certainly does so to some
extent in effect. He is classified in section 1754, cited above,

with lessees and tenants "for agricultural purposes," and section 1754 provides that, "whenever the *lessor* or his *assignees* shall get the actual possession of the crop, or any part thereof, otherwise than by the mode prescribed in the preceding section, and said lessor or his assignees shall refuse or neglect, upon notice, written or oral, of five days, given by the lessee or cropper, or the assignees of either, to make a fair division of said crop, or to pay lessee or cropper, or the assigns of either, such part thereof as he may be entitled to under the lease or agreement, then in that case the lessee or cropper, or the assignees of either, shall be entitled against the lessor, or his assigns, to the remedies given in an action upon a claim for the delivery of personal property, to recover such part of the crop as he, in law, and, according to the lease and agreement, may be entitled to. The amount or quantity of said crop claimed by said lessee or cropper, or the assignees of either, together with a statement of the grounds upon which it is claimed, shall be fully set forth in an affidavit at the beginning of the action."

The remedy thus given is not only against the lessor but his assigns as well, and its purpose is to enable the cropper to recover his share of the crop in kind. The action so allowed is given against the lessor or employer, and, also, against any person to whom he may assign, or sell, the crop, or any interest therein, as, for example, the person who might have an "agricultural lien" upon it, acquired subsequently to the making of the contract with the cropper. Such assigns take the crop, or lien upon the same, subject to the right of the cropper to have his share thereof. The purpose is to protect and enforce the right of the cropper to his part of the crop for his own benefit, and for the benefit of his assigns, if he shall sell his part, as he may do. The lessor, landlord or employer cannot consume or dispose of the crop himself, nor can his assigns, nor can they encumber it, to

the prejudice of the cropper. Any sale of, or lien created upon it, is made subject to his right; otherwise the remedy thus given would be meaningless and nugatory—an empty pretense and a mockery of him whose labor had contributed to the production of the crop. The statute does not intend this. It intends to encourage and favor the laborer as to those matters and things upon which his labor has been bestowed, and that he shall certainly reap the just benefit of his toil.

It may be said that persons who take "agricultural liens" cannot have knowledge of such rights of the cropper, as his contract is not required to be registered. But they must take notice of the cropper's rights, just as they do the like rights and labor contracts of agricultural tenants. They take such liens at their peril; they should make proper inquiry before taking them. It is their folly, or misfortune, if they do not. It might be better to require notice of a cropper's contract to be registered, as required in case of the laborer's lien, but the statute does not so require. *Burr* v. *Maultsby*, 99 N. C., 263.

The plaintiff, therefore, was entitled to have his share of the crop, unaffected by the defendant's lien upon it, and the owner thereof, the father, was bound to set apart and deliver the same to him, as it appears he did do. Hence, the plaintiff had title to the property in controversy, and the defendants had no right to, or interest in it, by virtue of their lien upon the crop.

It may be, in view of the evidence, that the plaintiff might have been deemed to have assented to the lien, and thus concluded by it as to the defendants, but no question in that respect is raised by the pleadings, or appears in any part of the record.

Affirmed.