JOHN A. HARRISON & SON *v.* GEORGE RICKS.

The difference between a tenant and a cropper is—a tenant has an estate in the land for the term, and consequently, he has a right of property in the crops.   If he pays a share of the crops for rent, it is he that divides off to the landlord his share, and until such division the right of property and of possession in the whole is his.   A cropper has no estate in the land; and although he has in some sense the possession of the crop, it is only the possession of a servant, and is in law that of the landlord who must divide off to the cropper his share.

A rents from B a farm for one year, B agreeing verbally to furnish and feed the teams, and to find the farming utensils to make the crop, and to furnish A corn and bacon during the year, for which he was to be paid out of A's share; A was to furnish and pay for the labor and give B one half of the crop as rent: *Held,* that A was a tenant and not a cropper, who had a right to convey the crop subject to the right of the landlord to his share as rent.

Act of 1868–'69, chap. 64, cited and commented on.

(*Deaver* v. *Price,* 4 Dev. & Bat., 431; *Ross* v. *Swaringer,* 9 Ired. 481; *Walston* v. *Bryan,* 64 N. C. Rep. 764; *Hatchell* v. *Kimbro,* 4 Jones, 163; *McNeely* v. *Hart,* 10 Ired. 63; *Brazier* v. *Ansley,* 11 Ired. 12; *State* v. *Burrell,* 64 N. C. Rep. 661; *Denton* v. *Strickland,* 3 Jones, 61; *Dalglish* v. *Grandy,* Conf. Rep. 22, cited and approved )

CIVIL ACTION, for the delivery of two bales of cotton, tried before his Honor, *Judge Watts,* at the Spring Term, 1874, of the Superior Court of NASH county. .

The plaintiff introduced as evidence the following instrument :

" STATE OF NORTH CAROLINA, }
      Nash County.   }

This deed witnesseth : That whereas John A. Harrison & Son, of Castalia, Nash county, have agreed to make ~~peruke~~ to Ben. F. Moss, of the county of Nash, and State of North Carolina, certain advances in supplies, and for the purpose of enabling the said B. F. Moss to carry on his planting operations in the county of Nash and State aforesaid, for the pres-

ent year : Now, therefore, the said B. F. Moss agrees and binds himself and his heirs by these presents, to consign to the said John A. Harrison & Son, all the crop made by the said B. F. Moss on George Ricks' farm, in the year 1871, (it being one-half of all that is made on the farm, or all of his, B. F. Moss' part, consisting of cotton, corn, fodder, &c.,) to cover advances ; and that the said supplies to be made at different times during the year shall constitute a lien on the crop to the amount of one hundred dollars, that being the limit of said lien at any one time, as provided by an act to secure advances for agricultural purposes.   July 12th, 1871.

Given under my hand, &c.

(Signed)                    B. F. MOSS.   [L. S.]"

Plaintiff then proved by the said B. F. Moss, that after the execution of the foregoing instrument, designed to be a mortgage or lien, and until his crop was gathered, the plaintiff advanced to him in supplies one hundred and twenty dollars, to enable him to make and secure his crop during the year mentioned in the lien.

Moss also stated, that in January, 1871, he rented from the defendant, George Ricks, the farm mentioned above ; that defendant was to furnish the teams (two horses) to make the crop, the farming utensils and feed for the teams, and to supply him with corn and bacon during the year ; and that he, Moss, was to furnish and pay for the labor, and give the defendant one-half of the crop for rent of the land.   That this contract for the rent of the land was not reduced to writing. The cotton in controversy was made on said land during the year 1871.

He further stated that Ricks complied with his part of the contract until the month of June in said year, when he refused to furnish him, Moss, with any more supplies, unless he would clear up some land for him, Ricks ; that such clearing not being a part of his agreement, he refused to do it, and thereupon Ricks stopped the supplies, and he then gave a lien to

the plaintiffs, Harrison & Son. Moss gathered and housed the crop, when the defendant took and carried it away, including the cotton sued for, without Moss' permission, and in his absence and before any division.

Upon being cross-examined, Moss stated that he agreed when he rented the land that the defendant, Ricks, was to be paid for the supplies furnished out of his, Moss' half of the crop.

His Honor being of opinion that Moss was a cropper and not a tenant, and that no title to the cotton vested in him, and that consequently he had no right to convey any title to the plaintiffs, held that the action could not be maintained. Whereupon the plaintiffs submitted to a non-suit and appealed.

*Bunn & Williams*, for appellants.
*Davis* and *Batchelor*, contra.

RODMAN, J. This is an action to recover specific property, and the first question is,

1. As to the title of the plaintiff.

The plaintiffs claim, under a deed from Moss, dated in July, 1871, by which, after reciting that plaintiffs had agreed to make advances to enable Moss to carry on planting operations during that year; Moss binds himself to consign to plaintiffs all the crop made by him on Rick's (the defendant's) farm in the year 1871, it being half that is made on the farm, or all of his (Moss's) part, to cover advances to be made by plaintiffs, which should constitute a lien on the said crop, &c, to an amount not exceeding $100. This deed was duly registered on the 14th of July, and plaintiffs made advances to the amount of $120.

The act of 1866–'67, chap. 1, re-enacted by the act of 1872–'73, chap. 133, which may be found in Battle's Revisal, chap. 65, secs. 19 and 20, provides that persons making advances to cultivators of the soil shall be entitled to a lien on the crop which may be made during the year " in preference to all other

liens existing or otherwise:" *Provided*, an agree nent in writing be entered into and the same be registered. And (by sec. 3) *provided further*, that the rights of landlords to their proper share of rents shall not be affected.

There can be no doubt, therefore, that the plaintiffs had, as against Moss, and against all persons who had no paramount rights, a right to a moiety of the crop of 1871. And supposing Moss to have been a tenant of the defendant, and as such to have had the rightful possession of the whole crop, then the plaintiff was a tenant in common with Moss, and equally entitled with Moss to the possession of the common property. This right, of course, was subject to all paramount or prior rights, if any.

2. The next question is, did the defendant have any right of property in the crop. The defendant's right, upon the evidence of Moss was this: In January, 1871, Moss rented from defendant the land on which the crop in question was raised. Defendant furnished the horses and utensils of cultivation, and agreed to furnish food for the horses and laborers during the year. Moss was to furnish the labor "and to give the defendant one-half of the crop for rent of the land." It was a part of the contract that Moss should pay the defendant for the supplies of food furnished by him out of Moss' share of the crop. The contract between these parties was not in writing.

Without noticing at present, the landlord and tenant act of 1868-'69, we will consider whether Moss was a cropper or a tenant of the defendant, and the rights arising out of those relations at common law unaffected by our statutes.

The difference between a tenant and a cropper is clear. A tenant has an estate in the land for the term, and consequently he has a right of property in the crops. If he pays a share of the crop for rent, it is he that divides off to the landlord his share, and until such division the right of property and of possession in the whole, is his. The landlord has no lien on the crop for rent, whether such lien be stipulated for or not; although if such lien be given by agreement, it is, as will be

seen, strong evidence that the occupier is not a tenant, but a cropper. *Deaver* v. *Rice*, 4 D. & B., 431 ; *Ross* v. *Swaringer*, 9 Ire., 481 ; *Walston* v. *Bryan*, 64 N. C., 764 ; *Hatchell* v. *Kimbro*, 4 Jones, 163.

A cropper has no estate in the land ; that remains in the landlord. Consequently although he has, in some sense, the possession of the crop, it is only the possession of a servant, and is in law that of the landlord. The landlord must divide off to the cropper his share. In short, he is a laborer receiving pay in a share of the crop. *McNeely* v. *Hart*, 10 Ire. 63 ; *Brazier* v. *Ansley* 11 Ire., 12.

Which of these characters an occupier bears depends entirely on the agreement between the parties.

It is a question of interpretation, and the intent, when ascertained, must govern, as in other contracts.

Some rules may be deduced from the cases which may serve to guide us to the intent.

1. If the contract clearly conveys the land to a lessee for a term, in the absence of some contrary and controlling provision, the lessee is a tenant. But generally, when the contract is oral or inartificially drawn, it is left doubtful whether an estate in the land was intended to pass. In such case the intent, one way or the other, must be inferred from the other provisions of the agreement. The use of the word " rent," as that the owner has " rented " his land to another, has, by itself, but little weight in the interpretation of an oral or inartificially and obscurely written contract.

2. If the occupier is to pay a money rent, the title to the crop must necessarily be in him in order that he may convert it into money. He is, therefore, strictly a tenant.

3. If the occupier is to pay the landlord a share of the crop as rent, the property in the whole must be in him in order that he may make the division, and he is a tenant. This interpretation may, however, be controlled by other provisions ; as, for example, by a positive agreement that the property in the whole shall be in the landlord, either that he may make the

division or that he may be secured by a lien. The stipulation for a lien must be either void, or it must make the occupier a cropper, as it was held to do in *State* v. *Burrell*, 64 N. C., 661.

4. If the landlord is to divide to the occupier his share, the property in the whole must be in the landlord, and the occupier is only a cropper. *Denton* v. *Strickland*, 3 Jones, 61.

It would be an unnecessary waste of time to review in detail the cases from which these rules are drawn. They are singularly uniform and are all cited in the briefs of counsel.

We think, under these rules, that Moss was a tenant and not a cropper. This follows from that provision of the contract by which Moss was to pay (or divide off) to defendant his share of the crop; and the effect of this is not qualified by any agreement that the defendant should have a lien on the crop, or by any contrary provision whatever.

The question then occurs, were the rights of the defendant affected to his advantage by any statute? The act for the better security of landlords (1866-'67, chap. 47) is omitted from Battle's Revisal, no doubt because the learned reviser thought it repealed by the act of 1868-'69, chap. 64. In this we concur with him. We turn, then, to that act.

Section 12 gives to a landlord who leases land for a share of the crop, or for that and the performance of other stipulations as rent, a lien on the crop for such share, and for any damages for the breach of such stipulations. As between the occupier and third persons, he may be regarded as a tenant having an estate in the land for the term, but as between him and the landlord, he is only a cropper. But by this section the contract to have that effect, must be in writing.

Section 13 gives to a landlord who leases for a money rent a lien on the crop, whether the contract of lease be in writing or not. This lien was probably intended as a substitute for the old English remedy of distress which was long ago held to have been abolished in this State. *Dalgleish* v. *Grandy*, Conf. R. 22.

Section 14 is not contradictory of the previous ones. It does not alter the right of lien given by them. It makes it penal in a tenant to remove the crop when he has no right to do so.

As the agreement with Moss was not in writing, the defendant cannot claim a lien under section 12.

The property in the whole crop was therefore in Moss until he made a division, and he had a right to convey it to the plaintiffs, subject to the right of the landlord to his share as rent. (Act 1866-'67, chap. 1.) But it is seen that the landlord had no lien on the crop. By permitting his right both to rent and to compensation for his advances, to rest on the oral promise of Moss and without any agreement for a lien, he lost all other remedy than by an action on such oral promise. The right of the plaintiff therefore is not affected by the concluding proviso in sec. — of the act of 1866-'67.

The plaintiff is a tenant in common with Moss, and as such may maintain an action to recover the possession of the whole from a wrong doer, as the defendant is. By a plea in the nature of a plea in abatement, the defendant might have compelled the plaintiff to have joined Moss as a co-plaintiff, (1 Chit. Pl. 65,) and thus perhaps have availed himself of his counter claim against him, but he cannot otherwise take advantage of the non-joinder.

Judgment below reversed. There must be a *venire de novo.*

PER CURIAM.                              Judgment reversed.