WHITE *v.* BOYD.

MARY A. WHITE and ALEXANDER GREEN v. BOYD & YOUNG.

(Decided March 14, 1899).

*Principal and Agent—Tort Waived—Landlord and Cropper.*

1. Where a tort-feasor disposes of personal property through an agent, who sells and pays over to him the proceeds of sale, the true owner may waive the tort growing out of the conversion, ratify the sale, and sue either of them for money had and received, and in such case ignorance of the tort is no defense for the agent.

2. Where the proprietor of a *"tobacco warehouse"* receives tobacco from a farmer, not for storage for hire, but to sell, on commissions at public auction by his own auctioneer and to deliver to the purchaser, he is not a warehouseman proper, but the agent of his employer, although that employer may be present with the privilege to refuse the bid made to the auctioneer.

CIVIL ACTION for conversion of lot of tobacco. Tort waived, and suit on contract, commenced in Justice's Court in Halifax County, and carried by appeal to Superior Court, and tried before *Norwood, J.,* at November Term, 1898.

The defendants, Boyd & Young, owned a tobacco warehouse at Enfield, and were engaged in the business of selling leaf tobacco there on commission. Their auctioneer would sell the tobacco on the floor,—they would pay the farmer, and hold the tobacco until paid for by the purchaser. The farmer, if dissatisfied with the bid offered, could reject it.

J. M. Crowder was the cropper of the plaintiff Mary A. White, in 1897. Without her knowledge and consent he carried a lot of tobacco raised that year to the warehouse of the defendants, where it was sold, and he received the money.

124—12

On this lot of tobacco the plaintiff White had the landlord's lien, and the plaintiff Green had registered mortgages on it from both landlord and cropper, of which defendant had notice, for their respective interests. Crowder went off with the money, $147.05, without settling either lien or mortgage. Upon this evidence, the defendants moved for judgment as of nonsuit, which the Court allowed.

The plaintiffs excepted and appealed.

*Mr. E. L. Travis,* for plaintiffs (appellants).
*Messrs. McRae & Day,* for defendants.

MONTGOMERY, J. For the convenience of both the buyers and the owners of the tobacco in the leaf, salesrooms, commonly called warehouses, are to be found at convenient places in the tobacco-growing districts, to which the article is caried to be sold. This action was brought to recover the proceeds of the sale by the defendants of certain leaf tobacco, alleged to have been the property of the plaintiffs and to have been sold by the defendants without the knowledge or consent of the plaintiffs. The plaintiffs waived the tort growing out of the allegd conversion of the tobacco by the defendants, ratified the sale and brought this action for money had and received, which remedy they had the right to adopt. *Sugg v. Farrar,* 107 N. C., 123; *Brittain v. Payne,* 118 N. C., 989.

It appeared from the evidence that the defendants sold certain leaf tobacco, which was delivered to them by one Crowder, who was both the cropper of the plaintiff White and a mortgagor of the plaintiff Green; that the compensation which the defendants received in the transaction was in the nature of commissions on the sales; that the tobacco was sold without the knowledge or consent of the plaintiffs,

and that defendants had actual notice of the mortgage. The plaintiff White, landlord, had also executed a mortgage on the tobacco to the other plaintiff.

Upon the conclusion of the plaintiffs' evidence, on motion of defendants' counsel, his Honor dismissed the action under chapter 109, Laws 1897.

We may say, in the beginning of the discussion, that the facts in this case do not constitute the defendants warehouse-men, whatever they may call the place where the tobacco was sold. They sold upon commission and did not undertake to store the tobacco for hire. "A warehouse is a building or place provided for the receipt and storage of property. A warehouseman is a person who receives goods and merchandise for hire." Am. & Eng. Enc. of Law, Vol. ...., p. .....  Whether or not his Honor was correct in dismissing the action depends upon the nature of the business of the defendants, that is, whether they were agents, under any of the various forms of agency, of Crowder, the person who delivered to them the tobacco to be sold. If they were the agents of Crowder, then in our opinion they are liable to plaintiffs for their action in the sale of the tobacco.

The defendants' contention is that they were not the agents of either Crowder or the purchaser of the tobacco; that they simply brought together the buyer and Crowder, the apparent owner of the tobacco, for the convenience of them both, and that it was in the power of Crowder to refuse the bid made to the auctioneer of the defendants "by turning the tag," that is, by removing or displacing the scrap of paper attached to a small pointed splinter of wood and stuck into the pile of tobacco by an employee of the defendants, who followed along upon the heels of the auctioneer, and on which paper was written the name of the purchaser and the price bid. And the defendants further contend that they did

not undertake to hold the tobacco against the lawful claims
of any one, and that they had no interest in, nor did they
claim any, in the tobacco; and that as a compensation for
their services in offering the tobacco for sale and finding a
purchaser, they received only a commission on such sales.
In support of their contentions the counsel of the defend-
ants referred us to the case of *Abernathy & Long v. Wheeler,
Mills & Co.,* 92 Ky., 320. In that case the tobacco of the
mortgagee was shipped to the managers (called warehouse-
men) of the sales-rooms by a person other than the mort-
gagee, without the latter's knowledge or consent, was sold,
and the proceeds paid to the shipper. The fact appeared,
there, that the salesmen of the tobacco had no actual notice
of the mortgage. In the opinion in that case it was recited
as a reason for the decision that the defendants were not
liable to the mortgagee for a conversion of the property, that
they had no knowledge or information that any other person
than the shipper had any interest in the tobacco. The de-
cision, therefore, can be of no service to us, even if it was
correct in the conclusion that a lack of actual notice of the
mortgage on the part of the defendants protected them
against the suit of the plaintiffs, for, as we have said, the
defendants here had actual knowledge of the mortgage of the
plaintiff Green. But we do not concur in the reasoning of
the case of *Abernathy v. Wheeler, supra,* nor in the conclu-
sions of the Court. We think that so far as the legal effect
of the acts of the defendants in our case is concerned, the
matter of actual notice, on the part of the defendants, of
the mortgage, is of no consequence.

The question is, did the defendants, when, at the request
and under the direction of Crowder, they took possession of
the tobacco conveyed in the mortgage and sold it in the
manner set out in the evidence become mere intermediaries,

mouthpieces of Crowder, or did they become Crowder's agent, for the purpose of selling and delivering the tobacco to the purchaser? Their possession of the tobacco was complete; it was on their floor; it was "cried off" by their auctioneer; they delivered it to the purchaser; they collected the price from the buyer and paid it to Crowder himself, who had no right to receive it. All this was done under the direction of Crowder. The agency was as complete as it could possibly be made. The contention that the sale was in fact made by Crowder himself, because he had the privilege under the rules governing the sales, to indicate his refusal to accept the bid, will not stand the test of examination, for the reason that he did not avail himself of the privilege, but accepted the bid and received the money on it. Also the defendants received compensation in money for their services in making the sale. The agency, then, being complete, did the facts constitute a conversion? The conversion of personal property is complete when one who is not the owner of the property deals with it as if he were the true owner. In Pollock on Torts the author says: "Actually dealing with another's goods as owner, for however short a time and however limited a purpose, is therefore conversion; so is an act which in fact enables a third person to deal with them as his own, and which would make such dealing lawful only if done by the person really entitled to possess the goods. It makes no difference that such acts were done under a mistaken but honest and even reasonable supposition of being lawfully entitled." In Cooley on Torts, p. 451, it is written: "One who buys property must at his peril ascertain the ownership, and if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion. The vendor is equally liable whether he sells the property as his own, or as an officer or agent; and so is the party for

whom he acts, if he assists in or advises the sale." In Story
on Agency, 311 and 312, it is said in reference to the liabil-
ity of agents to third persons for their own misfeasances and
wrongs: "In all such cases the agent is personally responsi-
ble, whether he did the wrong intentionally, or ignorantly by
the authority of his principal, for the principal could not
confer on him any authority to commit a tort upon the
rights or the property of another. *A fortiori* if the princi-
pal is a wrongdoer, the agent, however innocent in intention,
who participates in his acts, is a wrongdoer also." In the
case of *Hoffman v. Carow,* 20 Wend., 285, an auctioneer
who sold stolen goods was held to be liable to the owner for
the conversion, notwithstanding that the property was sold
and the proceeds handed over to the thief, without notice of
the felony. To the same effect is *Koch v. Branch,* 44 Mo.,
542. In that case are brought forward Lord Ellenborough's
remarks in *Stephens v. Elwall,* 4 Maule & Selw., 259, where
the plaintiffs were the assignees in bankruptcy of a man
by the name of Spencer, and the bankrupt sold goods of the
bankrupt to one Deane, who bought for the trade in America
and who had a house in London in which the defendant was
his clerk. "The clerk acted under an unavoidable ignorance
and for his master's benefit when he sent the goods to his
master, but nevertheless his acts may amount to a conver-
sion; for a person is guilty of a conversion who intermed-
dles with my property and disposes of it, and it is no answer
that he acted under authority from another, who had him-
self no authority to dispose of it." In *Kimball v. Billings,*
55 Me., 147, it was said by the Court: "It is no defence in
an action of trover that the defendant acted as the agent of
another. If the principal is a wrongdoer the agent is a
wrongdoer also. A person is guilty of a conversion who sells
the property of another without authority from the owner,

notwithstanding he acts under the authority of one claiming to be the owner and is ignorant of such person's want of title." In that case a grocery merchant exchanged for money some government bonds, for a person who had stolen them, the groceryman, defendant, having no knowledge of the theft. In *Coles v. Clark,* 3 Cushing, 399, the defendant, who was an auctioneer, sold goods which were delivered to him by a mortgagor, and without any knowledge of the mortgage, and the Court said: "That the sale and disposition of the goods, the delivery of them and receiving the proceeds by order and direction of the mortgagor, who had neither title nor power, was a conversion, and that this action may be maintained." The plaintiff in the present case had a qualified property and right of possession by virtue of his mortgage, of which the registration was constructive legal notice; the sale and disposal of the goods by the defendants were in law a conversion, without knowledge of suspicion of the fraudulent purpose of Blake, the mortgagor, and the jury should have been so directed."

In *Robinson v. Bond,* 158 Mass., 357, the defendant, who was an auctioneer, sold goods which were delivered to him to be sold by a bailee, and was held liable at the suit of the bailor for the conversion. The Court said in that case: "The defendant is an auctioneer, who has sold personal property belonging to the plaintiff. Therefore he is liable for a conversion, unless he can show some other excuse or justification than his good faith and his ignorance of the plaintiffs' title."

There was error in the ruling of his Honor in dismissing the action.

New trial.