J. Q. ADAMS AND C. B. ADAMS v. GROWERS' WAREHOUSE, INCORPO-
RATED, AND DIXIE GROWERS WAREHOUSE, INC.

(Filed 12 October, 1949.)

1. Agriculture § 1a—

Title to and possession of crops cultivated and harvested by a tenant
or share cropper rests in the landlord until the rents are paid and the
landlord's lien for advancements is discharged, and the landlord may have
recourse against any person who may get possession of the crops without
his consent. G.S. 42-15.

2. Same—

Where landlords give their tenant possession of their AAA marketing
card, and the tenant sells tobacco grown on the farm and receives the
purchase price from the warehouseman, the landlords may not hold the
warehouseman liable for their lien for rents and advancements, since their
clothing of the tenant with authority or apparent authority to receive
payment amounts to a consent to such payment. Although the landlord
may not deprive the tenant of his share of the tobacco on his marketing
card, he can, through its possession, control the sale and protect his lien.
7 U.S.C.A. 1312 et seq.

APPEAL by plaintiffs from *Frizzelle, J.,* June Special Term, 1949,
JOHNSTON. Affirmed.

Civil action to recover the value of tobacco sold on defendants' ware-
house floor.

The defendants operate a warehouse in Smithfield, N. C., for the sale
of leaf tobacco by tobacco producers. In 1946 one Semmie Stancill culti-
vated tobacco on the lands of plaintiffs as a share crop tenant. During
the year, plaintiff made certain advancements to him to enable him to
cultivate and harvest the crop.

Prior to 25 October 1946 plaintiffs delivered their AAA marketing
card to Stancill and told him to carry his tobacco to Varina. However,
they did not require him or their other tenants to carry tobacco to any
particular market. Stancill told them at the time he was not willing to
carry it to Varina. With this information they permitted him to retain
the marketing card.

On 25 October, Stancill carried 2,080 pounds of tobacco to Smithfield
and sold it on the defendants' warehouse floor. Defendants issued their
check for the net amount of the sale in the sum of $997.20 to Stancill and
Adams and delivered same to Stancill. He presented the check to the
bank for payment and received the money therefor. He applied $600
of the proceeds on a mortgage note to the Farm Security Administration,
signed by him and his landlord. He has not accounted for the balance.
At the time, plaintiffs had a landlord's lien on the tobacco for rent and

advancements and entered this suit to recover the value of the tobacco to be applied to the discharge thereof.

At the conclusion of the evidence, the court, on motion of defendants, entered judgment of nonsuit and plaintiffs appealed.

*Lyon & Lyon for plaintiff appellants.*
*Hooks & Mitchiner for defendant appellees.*

BARNHILL, J.  We are not concerned here with any misconduct on the part of Stancill in disregarding the request of plaintiffs, or in disposing of property subject to lien, or in failing to account for the proceeds of sale.  We are concerned only with the liability of defendants to plaintiffs for the value of tobacco raised on plaintiffs' farm and sold on defendants' warehouse floor.

Title to and possession of crops cultivated and harvested by a tenant or share cropper rests in the landlord until the rents are paid and the landlord's lien for advancements is discharged, and the landlord may have recourse against any person who may get possession of the same without his consent.  G.S. 42-15; *Rhodes v. Fertilizer Co.,* 220 N.C. 21, 16 S.E. 2d 408.

Did the plaintiffs assent to the sale so as to relieve defendants of liability for the value of tobacco they admittedly received from the tenant?  Upon the answer to this question decision must rest.

Flue-cured tobacco is now marketed under a quota system prescribed by Act of the Congress and approved by vote of the tobacco farmers, 7 U.S.C.A. sec. 1312 *et seq.,* and its sale is controlled by marketing quota regulations adopted by the U. S. Department of Agriculture under authority of the Congressional Act.  7 U.S.C.A. 610.  Under this statute and the regulations adopted pursuant thereto, an acreage allotment is made each year to the owner or operator of a farm devoted in part to the cultivation of tobacco, and a marketing card is issued in the name of the owner for the farm as a whole and delivered to the owner.  7 U.S.C.A. 1313 (g).  The card is evidence of compliance with the statute and the regulations adopted thereunder, and is authority to make sale of the tobacco raised on the farm for which the card is issued.

Sale of tobacco in excess of the allotment or without a marketing card is subject to heavy penalty.  This penalty is to be collected by the warehouseman at the time of sale, and if he fails to do so or makes payment without the production of a sale memorandum out of the marketing card, he must pay the penalty.  7 U.S.C.A. 1314.

The farmer places his tobacco on the warehouse floor for sale.  It is auctioned off and bid in by the buyers attending the sale.  The warehouseman then issues his bill of sale in the name of the producer and his

23—230

tenant, if any. This bill of sale is identified by number and contains detailed information respecting the sale, including the gross sale price, the warehouse charges, and the net amount due the seller. Up to this point in marketing the tobacco, the production of the marketing card is not essential, for the farmer may make sale of tobacco in excess of his allotment or without allotment by paying the 40% penalty charge.

Upon receipt of the bill of sale, the farmer carries it to the office for the purpose of demanding and receiving check for the net amount due him. This is the time he must produce his marketing card.

This marketing card is in the form of a coupon book. Each page or coupon is composed of a stub and a memorandum sheet upon which is to be entered certain information at the time the sale is closed. Each marketing of tobacco from a farm must be identified by an executed memorandum of sale from the marketing card issued for the farm on which the tobacco was produced. This memorandum is executed upon production of the warehouse bill of sale by an authorized AAA agent and is authority of the warehouseman for the issuance and delivery of the purchase price check. In the absence of such memorandum duly executed the sale or "marketing" must be suspended, and if the card is not produced within four weeks thereafter, the sale is subject to the full 40% penalty.

Upon receipt of the memorandum from the marketing card, executed by the agent of the AAA, the warehouseman issues his check for the net amount due the seller less any penalty charges noted upon the memorandum. The serial number of the memorandum of sale issued to identify each marketing of tobacco or the number of warehouse bill covering the marketing must be recorded on the check register or check stub for the check written with respect to such sale of tobacco. See U. S. Department of Agriculture Tobacco Marketing Quota Regulations, Title 7, Part 725.

Thus the possession and production of the marketing card and the issuance of a sales memorandum therefrom by the AAA agent is authority for the warehouseman to issue and deliver his check for the purchase price of the tobacco.

When the plaintiffs delivered their marketing card to Stancill, they placed him in position to produce it as his credentials for the receipt of the check for the tobacco. This is the only use to which he could have put it. By their act they consented to the payment. They cannot now complain that defendants acted on the authority or apparent authority they thereby vested in their tenant. The resulting loss must rest on them and not on defendants.

It is true the applicable regulations provide that the owner or operator must sell or permit the sale of his tenant's share of the tobacco on his marketing card. But this does not mean that he must surrender the card to his tenant or forego the protective provisions of the State law respect-

ing the possession and sale of agricultural products. It simply means he cannot sell his share and leave the tenant, to whom no marketing card is issued, without means of disposing of his share. The card is for the sale of all tobacco produced on the farm. Through its possession the landlord can control the sale and protect his lien. At the same time he must not deprive his tenant of his marketing privileges through the medium of the farm marketing card.

For the reasons stated the judgment below is

Affirmed.