S. P. HALL v. W. D. ODOM, E. R. EVANS AND W. M. ODOM, TRADING AND DOING BUSINESS AS FARMERS IRON WAREHOUSE.

(Filed 7 April, 1954.)

**1. Agriculture § 1a—**

The landlord's lien for rent attaches to the entire crop until the rent is paid regardless of whether the relationship is that of landlord and tenant or that of owner and cropper.

**2. Same—**

The landlord's lien for rent in agricultural tenancies exists solely by virtue of statute in this State, and the statute itself gives notice thereof so that no registration or written instrument is required or contemplated.

**3. Agriculture § 5d—**

Where the rent is payable in a fixed amount of money, the tenant owns the crop subject to the landlord's lien for rent and has the right to sell, but the purchaser takes subject to the landlord's lien, and when the crop is sold on the floor of a tobacco warehouse, the warehouseman, as selling agent, deals with the crop with statutory notice of the lien and may be held accountable by the landlord on the basis of money had and received up to the balance due as rent.

**4. Same: Estoppel § 11b—**

   A landlord may waive his lien for rents by agreement, express or implied, or may be estopped from asserting his lien by acts and conduct constituting the tenant his agent to sell the crop for their joint benefit and account to the landlord for his share out of the proceeds of sale. Such waiver or estoppel is an affirmative defense which the purchaser must plead with certainty and particularity, and establish by the greater weight of the evidence.

**5. Same—**

   In accordance with the custom in a county, quota marketing card was issued in the name of the tenant alone as the "operator" (7 Code of Federal Regulations, secs. 725-230, *et seq.*). There was no evidence that the landlord procured the card to be so issued or participated in any way in its issuance. *Held:* In the landlord's action against the warehousemen to recover the amount of his lien for rents on tobacco sold by the tenant and collected for by the tenant without accounting to the landlord, plaintiff's evidence being sufficient to make out a *prima facie* case, and the undisputed evidence being insufficient to establish the defense of waiver or estoppel as a matter of law, nonsuit was error.

APPEAL by plaintiff from *Hall, Special Judge,* December Term, 1953, of HERTFORD.

Civil action by plaintiff, a landlord, to recover from the defendants, operators of a tobacco sales warehouse, a balance of $209.15, alleged to be due as rent by one Thomas Booker, plaintiff's tenant, on account of the defendants' purchase from Booker of tobacco raised by him on plaintiff's farm and the payment to Booker by the defendants of the purchase price thereof, to wit, $223.96, no part of which was paid by Booker to the plaintiff.

The rental contract between the plaintiff and Booker was for the year 1951, the agreed rental was $500.00; and the plaintiff's cause of action is predicated upon his landlord's lien. The plaintiff alleges that upon such sale the defendants became indebted to him as lienholder for the purchase price up to the balance due on rent. It is further alleged that no portion of the crop remains from which the plaintiff can collect the balance of $209.15.

The defendants admit that on 21 August, 1951, they sold at auction tobacco placed on their warehouse floor by Booker; that the sale price was $223.96; and that the defendants deducted warehouse charges of $7.51 and paid the net amount of $216.45 by check to Booker. Otherwise, the material allegations of the complaint are denied.

The defendants further allege, as a plea in bar, that Booker exhibited the quota marketing card, No. C-459801, issued for farm #80, by the Hertford County P.M.A. office, Winton, N. C., in the name of Thomas Booker, and that the plaintiff "by permitting the said marketing card to

be issued in the name of Thomas Booker, placed him in position to produce it as his credentials for the receipt of the purchase price of said tobacco and that plaintiff thereby consented to the payment by the said defendant to the said Thomas Booker and thereby waived his lien, if any he had, and therefore the plaintiff is estopped and is thereby barred from asserting or claiming any lien or interest in same."

At the close of all the evidence the trial judge allowed the defendants' motion for judgment of involuntary nonsuit and dismissed the action. Plaintiff appealed.

Upon appeal, plaintiff assigns errors addressed to rulings of the trial judge relating to the admission and exclusion of evidence and to the judgment of involuntary nonsuit.

*Jones, Jones & Jones and John R. Jenkins, Jr., for plaintiff, appellant.*
*J. Carlton Cherry and Pritchett & Cooke for defendants, appellees.*

BOBBITT, J.   The landlord's lien on crops for the payment of rent in agricultural tenancies is a statutory lien. The English law of distress and sale for nonpayment of rent did not become a part of the law of this State. *Dalgleish v. Grandy,* 1 N.C. 249. Until created by statute, a landlord had no lien on the crop of his tenant for the payment of rent. He (the lessor) stood on "no better footing" than other creditors of the lessee. *Deaver v. Rice,* 20 N.C. 567; *Howland v. Forlaw,* 108 N.C. 567, 13 S.E. 173; *Reynolds v. Taylor,* 144 N.C. 165, 56 S.E. 871.

Superseding prior statutes, the Landlord and Tenant Act of 1876-7 (1876-7, Ch. 283) was enacted; and, except in respect of matters not relevant here, this statute has continued in effect without modification, being G.S. 42-15 and providing, in pertinent part, as follows:

"When lands are rented or leased by agreement, written or oral, for agricultural purposes, or are cultivated by a cropper, unless otherwise agreed between the parties to the lease or agreement, any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor or his assigns at all times, until the rents for said lands are paid and until all the stipulations contained in the lease or agreement are performed, or damages in lieu thereof paid to the lessor or his assigns, and until said party or his assigns is paid for all advancements made and expenses incurred in making and saving said crops. . . .

"This lien shall be preferred to all other liens, and the lessor or his assigns is entitled, against the lessee or cropper, or the assigns of either, who removes the crop or any part thereof from the lands without the consent of the lessor or his assigns, or against any other person who may get possession of said crop or any part thereof, to the remedies given in an action upon a claim for delivery of personal property."

*Harrison v. Ricks,* 71 N.C. 7, was decided in 1874; and in that case *Justice Rodman* gives a clear analysis of the rules for determining whether under the special terms of various rental contracts the relationship created is that of landlord-tenant or that of owner-cropper. While difficulties often arise in making a determination as to the appropriate classification when the rent to be paid is a specified share of the crop, no difficulty is encountered when the rent is a fixed amount of money. As stated by *Rodman, J.:* "If the occupier is to pay a money rent, the title to the crop must necessarily be in him in order that he may convert it into money. He is, therefore, strictly a tenant."

In *Harrison v. Ricks, supra,* the rental contract was held to create the landlord-tenant relationship, albeit the rent to be paid was specified to be one-half of the crop. The tenant conveyed the crop to the plaintiff Harrison as security for advancements. The defendant (landlord) seized the crop, asserting the priority of his landlord's lien and alleging that the tenant had no right to convey the crop to the plaintiff. It was held: first, that the tenant was the owner of the crop and had the right to convey it subject to the lien, if any, of the landlord; and second, the landlord had no lien since under the Act of 1868-9, Ch. 64, then applicable, a written rental contract was a prerequisite to a landlord's lien. The Act of 1876-7 eliminated the necessity for a written rental contract as a prerequisite to a landlord's lien.

The Act of 1876-7 (G.S. 42-15) gives the landlord a preferred lien on the entire crop, regardless of whether the relationship is that of landlord-tenant or that of owner-cropper, *until the rent is paid.* The statute vests the possession of the crop in the landlord; and, under this right of possession, he has the right to use force, if necessary, to prevent unauthorized removal by the tenant. *S. v. Austin,* 123 N.C. 749, 31 S.E. 731. Moreover, if the tenant, without the consent of the landlord, willfully removes the crop without giving five days' notice of removal, before satisfying the landlord's lien, he is guilty of a misdemeanor. G.S. 42-22. In such case, the tenant is liable both civilly and criminally; for the constructive possession of the crop is in the landlord. *Jordan v. Bryan,* 103 N.C. 59, 9 S.E. 135.

The landlord's lien exists by virtue of the statute. G.S. 42-15. No written instrument is required or contemplated. The registration acts, which apply only to written instruments capable of registration, have no significance relative to a landlord's lien. See *Spence v. Pottery Co.,* 185 N.C. 218, 117 S.E. 32. The statute itself gives notice to all the world of the law relative to a landlord's lien.

While not always expressly stated, it is implicit throughout the many decisions of this Court that the landlord's lien remains intact until the rent is paid and all who deal with a tenant with reference to the crop are

charged with notice thereof. *Belcher v. Grimsley*, 88 N.C. 88; *Sugg v. Farrar*, 107 N.C. 123, 12 S.E. 236; *White v. Boyd*, 124 N.C. 177, 32 S.E. 495; *Burwell v. Warehouse Co.*, 172 N.C. 79, 89 S.E. 1064; *Rhodes v. Fertilizer Co.*, 220 N.C. 21, 16 S.E. 2d 408; *Adams v. Warehouse*, 230 N.C. 704, 55 S.E. 2d 331. As stated by *Ruffin, J.*, in *Belcher v. Grimsley, supra:* "Nothing short of an actual payment or a complete satisfaction of the lessor's demands, meets the words of the statute or will serve to determine his lien, or title. Neither can the fact that the defendants had no notice of the plaintiff's claim at all impair it, in the absence of any suggestion of fraud on his part. It is a question of title, and the tenant can convey no better right to the property than he himself was possessed of. The principle of *caveat emptor* applies with full force to the case."

The result is that the tenant, who owns the crop subject to the landlord's rights and lien, has the right to sell the crop but in the same plight in which he holds it, *i.e.*, the purchaser from the tenant takes subject to the landlord's lien and, where the crop remains on the land, the purchaser can remove the crop only by consent of the landlord until the rent is paid. A purchaser from the tenant, or an auction sales warehouse selling as his agent, is dealing with a crop with statutory notice of the lien outstanding thereon. Therefore, nothing else appearing, if the defendants purchased the tobacco from Booker, or sold the tobacco as agents for Booker, and paid Booker therefor, without regard to the landlord's lien of the plaintiff, they would be accountable to the plaintiff on the basis of money had and received for the proceeds of sale up to the balance due as rent. *White v. Boyd, supra.*

It is not to be understood that a landlord cannot by agreement, express or implied, waive his lien, or by his acts and conduct be estopped from asserting his lien. Without undertaking to mark out what would constitute a waiver or an estoppel, for such may occur in a variety of ways, the gist of such affirmative defense is allegation and proof of such facts and circumstances as will establish the proposition that the landlord in effect constituted the tenant his agent to sell the crop for *their joint benefit* and account to the landlord for his share out of the proceeds of sale.

It should be borne in mind that we are considering now an affirmative defense which must be pleaded with certainty and particularity and established by the greater weight of the evidence. *Porter v. Armstrong*, 134 N.C. 447, 46 S.E. 997; McIntosh, N.C.P.&P., p. 481, sec. 461.

The only fact pleaded by the defendants here as a plea in bar is that the quota marketing card, relating to the farm rented by the plaintiff to Booker, was issued to Booker, to the knowledge of the plaintiff, and that this enabled Booker to effectuate the sale in compliance with the Federal Act and regulations thereunder.

The procedure for marketing flue-cured tobacco under the Act of Congress and the market quota regulations adopted by the U. S. Department of Agriculture is set forth clearly by *Barnhill, J.* (now *C. J.*), in *Adams v. Warehouse, supra.* Certain of the regulations for marketing year 1951-52 (7 Code of Federal Regulations, secs. 725-230, *et seq.*) are pertinent here.

Sec. 725.231 (1) provides: " 'Operator' means the person who is in charge of the supervision and conduct of the farming operations on the entire farm."

Sec. 725.231 (o) provides: " 'Producer' means a person who, as owner, landlord, tenant, sharecropper, or laborer is entitled to share in the tobacco available for marketing from the farm or in the proceeds thereof."

Sec. 725.238 provides: "Rights of producers in marketing cards. Each producer having a share in the tobacco available for marketing from a farm shall be entitled to the use of the marketing card issued for the farm for marketing his proportionate share."

Thus, it appears that a landlord or owner of the farm who is entitled to *a share* in the tobacco available for marketing is entitled to the use of the marketing card for marketing his proportionate share. The evidence tends to show: that in Hertford County in 1951-52, one quota marketing card was issued for each farm; that, if the tenant was to pay as rent a share of the crop, or if the cropper was to receive a share of the crop as compensation for his efforts, the practice was to issue the card in the name of the landlord or owner of the farm; and that if the relationship was that of landlord and tenant, the rental to be paid in cash, the tenant was considered the "operator" of the farm and in recognition of this fact the quota marketing card was issued in the name of the tenant alone.

The quota marketing card was issued to Booker, the tenant, and the plaintiff was aware of this fact. However, there is no evidence that the plaintiff procured the card to be so issued or participated in any way in its issuance. This was done by the Hertford P.M.A. office. The card constituted the credentials for marketing the tobacco on farm #80 in so far as the Act of Congress and the marketing quota regulations issued in pursuance thereof are concerned. It is not clear whether under the regulations or the practice in Hertford County the landlord could have required or caused the Hertford P.M.A. office to enter on the card his status as landlord under the contract for payment of a fixed cash rental. It must be concluded that since the card only enabled the tenant to market in compliance with the federal law without incurring drastic penalties, this does not of itself destroy or supersede the landlord's lien. The facts in connection with the issuance of the card, the plaintiff's knowledge thereof, etc., are to be considered along with all other relevant circumstances, bearing upon the ultimate issue, namely: did the plaintiff authorize

Booker to sell the crop for their joint benefit and account to him for the proceeds of sale and thereby waive his landlord's lien in respect of the tobacco so sold?

In *Adams v. Warehouse, supra,* the plaintiff was the landlord and one Stancill was a share crop tenant. The quota marketing card was issued to the plaintiff. The plaintiff had the right to market the tobacco. However, he turned over to the tenant his card (issued in the name of the landlord alone) so that the tenant by the use thereof could market the tobacco. The tenant sold the tobacco on the defendants' warehouse floor. It was held that by reason of this conduct the plaintiff was estopped to deny that he had constituted the tenant his agent to sell the tobacco for their joint benefit and account to him out of the proceeds of sale.

It should be noted that the mere fact that the landlord consents to the removal of the crop by the tenant from the farm, or knowingly permits its removal, for a limited purpose, *e.g.,* in order to prepare it for market, or to store it safely, is not sufficient to establish a waiver of his lien. *Belcher v. Grimsley, supra; Sugg v. Farrar, supra;* 1 Jones on Liens, p. 549, sec. 579.

Upon the present record, the plaintiff's evidence is sufficient to make out a *prima facie* case, requiring submission to the jury on the issues raised by the complaint and answer; and the undisputed evidence fails to disclose either waiver or estoppel as a matter of law. Whether the defendants can allege and establish facts and circumstances sufficient to satisfy the jury by the greater weight of the evidence that the plaintiff has waived his landlord's lien is yet to be determined.

It should be noted that such a plea in bar does not depend upon whether the defendants were *bona fide* purchasers, that is, purchasers for a valuable consideration without actual notice of an outstanding lien. Rather, it must be upon the basis of waiver by the plaintiff of his landlord's lien or estoppel by plaintiff to assert his landlord's lien. Thus, the agreements and dealings as between the plaintiff and Booker in relation to the marketing of the crop are of great significance. In the record before us, the plaintiff's testimony is meager on this aspect of the matter. Booker, the tenant, did not testify.

Attention is called to the fact that, subsequent to the decision in *Adams v. Warehouse, supra,* the General Assembly enacted Ch. 193, Session Laws of 1949, now G.S. 42-22.1, providing that a tenant who sells under a quota marketing card and fails to account to the landlord for the amount due him out of the proceeds of sale is guilty of a misdemeanor.

We have considered the defendants' contention that the judgment of involuntary nonsuit was proper on the ground that the plaintiff's evidence was insufficient to identify the tobacco sold as tobacco grown on the plaintiff's farm. Since there must be a new trial, we refrain from an analysis

of the evidence relating to this issue. Suffice it to say, we are of the opinion that the evidence was sufficient to warrant the submission of this issue to the jury.

Since the assignments of error relating to the admission and exclusion of testimony would not affect the result reached upon this appeal and the questions as presently posed may not arise upon a new trial, we think it inappropriate to discuss them in this opinion.

For the reasons stated, the judgment of nonsuit is reversed. Prior to the new trial, it may be that the parties will want to ask leave to amend their respective pleadings in the light of the law as stated herein.

Reversed.