WILLIAM J. SUGG, Co-PARTNER AND AGENT OF LOUISE M. SUGG, HEIRS v. MAX PARRISH, MAX FUTRELL AND N.C. NEWMAN, CO-PARTNERS, TRADING AND DOING BUSINESS AS BIG THREE WAREHOUSE, GOLDSBORO, NORTH CAROLINA

No. 8011DC492

(Filed 5 May 1981)

1. **Agriculture § 5– sale of tobacco by tenant – landlord's lien – no waiver or estoppel**

In an action to recover one-half the total sum due for tobacco sold by plaintiff's tenant at defendants' warehouse, plaintiff was entitled to the sum

claimed under the landlord's lien statute, G.S. 42-15, and plaintiff, as a matter of law, did not waive his lien nor was he estopped to assert it by his conduct in clothing his tenant with authority to make the sale by delivering his marketing card to the tenant and never contacting defendants with respect to division of the checks upon the completion of each sale, where the evidence permitted findings that one defendant had knowledge of plaintiff's superior claim, was requested by plaintiff not to make any disposition of the tenant's accustomed share pending further instructions from plaintiff, and nevertheless applied the proceeds to his own use or to that of the warehouse in disregard of plaintiff's superior lien rights.

2. **Agriculture § 5– sale of tobacco by tenant – evidence properly excluded**

In an action to recover one-half the total sum due for tobacco sold by plaintiff's tenant at defendants' warehouse, the trial court did not err in excluding testimony by plaintiff concerning transactions by the tenant at a warehouse other than defendants' during the year preceding that of the transactions in question, since the evidence had no bearing on the issue as to the existence of plaintiff's lien as landlord; there was no evidence tending to show that defendants had knowledge of or placed reliance on a course of dealing established between plaintiff, his tenant, and a warehouse other than defendants' during the preceding year; and the substance of the evidence which defendants attempted to elicit by questioning plaintiff was before the jury.

3. **Agriculture § 5– tenant's sale of tobacco – landlord's lien – issue submitted to jury**

In an action to recover one-half the total sum due for tobacco sold by plaintiff's tenant at defendants' warehouse where the evidence tended to show that the tenant had executed a note for the sum he owed plaintiff landlord and that plaintiff landlord had filed a claim against the tenant's estate for the amount of the note, there was no merit to defendants' contention that an issue arose as to whether plaintiff, by acceptance of the note, waived any statutory lien he might have, since the parties stipulated to the issues and defendants could not subsequently contend that a separate issue should have been submitted with regard to the note.

APPEAL by defendants from *Lyon, Judge.* Judgment entered 21 February 1980 in District Court, JOHNSTON County. Heard in the Court of Appeals 13 November 1980.

Plaintiff, for himself and as agent for his brother and sisters, filed this action against defendants, as partners in a tobacco warehouse, seeking to recover $2,190.25 with interest from 3 October 1977. He alleged that defendants had paid him $2,190.26, one-half the total sum due for tobacco which he sold at defendants' warehouse on 3 October 1977, but had not paid the balance of $2,190.25.

Defendants admitted that one R.G. Williams sold tobacco

with them on numerous occasions during 1977 using a marketing card issued in the name of plaintiff as "Executor." They alleged that Williams was plaintiff's tenant, and that the tenant represented that the sales proceeds were to be divided equally between him and plaintiff. On each occasion prior to the 3 October 1977 sale defendants disbursed the proceeds equally between plaintiff and his tenant; and plaintiff accepted his one-half share, thereby acquiescing in the disbursement procedure. Defendants also alleged that plaintiff was thereby estopped to claim the relief now requested.

As a further defense, defendants alleged that the procedure described is the "standard course [of] dealing used by the tobacco industry," and that it was known to and understood by plaintiff. They pled the course of dealing in bar of plaintiff's claim for relief. Finally, they alleged that plaintiff was merely seeking to collect a debt owed him by his tenant; and that recovery from defendants would result in "double recovery" to plaintiff and inure to the unjust enrichment of the tenant.

Plaintiff's evidence tended to show that in 1977 the tenant grew tobacco on plaintiff's land pursuant to agreement that plaintiff and tenant would share the net sales proceeds equally. Plaintiff furnished the land, fertilizer, herbicides and insecticides, while tenant provided the labor. Prior to the 3 October 1977 sale, the tenant had sold tobacco at defendants' warehouse on nine occasions. On each occasion the tenant sold under a marketing card issued to plaintiff as "Executor," which was given to tenant by plaintiff for use in selling the tobacco. Plaintiff was not present at the sales and had no communications with defendants concerning division of the proceeds. Subsequent to each sale defendants issued checks to plaintiff and the tenant in equal amounts. The tenant then brought the tobacco sales bills and the two checks to plaintiff to "settle up."

Prior to the 3 October 1977 sale, plaintiff had advanced $2,500-$3,000 to his tenant for harvesting the crops. The tenant also owed plaintiff approximately $7,000 for other advancements connected with the farming operations.

Subsequent to the 3 October 1977 sale, defendant Parrish came to plaintiff's house, indicated to plaintiff that the tenant owed him (Parrish) money, and advised plaintiff that he had held the tenant's one-half of the proceeds on that account.

Defendant Parrish told plaintiff, "Now, if this presents any problem to you or causes you any trouble, I will release the check to you." Plaintiff responded, "Just hold it and let me speak to [the tenant] and get some background and I will call you back." Plaintiff then talked to his tenant, and the tenant acknowledged that the warehouse had retained his check. When plaintiff called defendant Parrish to request that Parrish send him the tenant's check, however, Parrish declined; and none of the defendants ever tendered the check to him.

The tenant died in 1979. Prior to his death he had given plaintiff a note for the sum he owed plaintiff. Plaintiff had filed a claim against the tenant's estate for the sum due, but had not received any money as a result.

Defendants' evidence tended to show that defendant Parrish endorsed two notes executed by the tenant in the total sum of approximately $8,700.00. The tenant defaulted, and Parrish had to pay the notes. Parrish therefore withheld the tenant's $2,190.25 check. The tenant at some point endorsed the check over to Parrish, and Parrish deposited it in the warehouse account. Parrish testified that he "was not aware that the landlord had a lien against the crop for advances or rent in North Carolina."

Stipulated issues were submitted to and answered by the jury as follows:

1. Did the plaintiff have a landlord's lien on the crops of R.G. Williams, Jr. raised on plaintiff's lands during the crop year, 1977?

ANSWER: YES

2. If so, did the plaintiff, by his conduct, waive his landlord's lien?

ANSWER: NO

The court entered judgment, based on the verdict, in favor of plaintiff in the sum of $2,190.25 with interest from 3 October 1977.

From this judgment, defendants appeal.

*Ashley and Holland, by Wallace Ashley, Jr., for plaintiff appellee.*

*Taylor, Warren, Kerr and Walker, by Robert D. Walker, Jr., for defendants appellants.*

WHICHARD, Judge.

[1] Defendants assign error to the denial of their motion for a directed verdict. Plaintiff's claim to his tenant's agreed share of the sales proceeds derives from the landlord's lien statute, which provides, in pertinent part, as follows:

> When lands are rented or leased by agreement, written or oral, for agricultural purposes, . . . unless otherwise agreed between the parties to the lease or agreement, any and all crops raised on said lands shall be deemed and held to be vested in possession of the lessor or his assigns at all times, until the rents for said lands are paid and until all the stipulations contained in the lease or agreement are performed, or damages in lieu thereof paid to the lessor or his assigns, *and until said party or his assigns is paid for all advancements made and expenses incurred* in making and saving said crops. . . .
>
> *This lien shall be preferred to all other liens,* and the lessor or his assigns is entitled, against the lessee or cropper, or the assigns of either, who removes the crop or any part thereof from the lands without the consent of the lessor or his assigns, or against any other person who may get possession of said crop or any part thereof, to the remedies given in an action upon a claim for the delivery of personal property.

G.S. 42-15 (emphasis supplied). Plaintiff testified that he had made advancements to his tenant "in the neighborhood of $10,000.00 for all financing in connection with the cultivation of crops." It is clear that at least $2,500-$3,000 of this amount related to the crop in question. Under the express provisions of G.S. 42-15, then, plaintiff had a lien on the crops. This lien continued until plaintiff was paid for these advancements, and it had preference over all other liens against the tenant or the tenant's assigns. Defendant Parrish testified: "I was not aware that the landlord had a lien against the crop for advances or rent in North Carolina." As Justice (later Chief Justice) Bobbitt noted in *Hall v. Odom,* 240 N.C. 66, 69, 81 S.E. 2d 129, 132 (1954), however: "The landlord's lien exists by virtue of the statute. . . .

No written instrument is required or contemplated. The registration acts ... have no significance .... (Citation omitted.) *The statute itself gives notice to all the world of the law relative to a landlord's lien.*" (Emphasis supplied.) Thus, "[a] purchaser from the tenant, or an auction sales warehouse selling as his agent, is dealing with a crop with statutory notice of the lien outstanding thereon." *Id.* at 70, 81 S.E. 2d at 132.

Defendants contend, nevertheless, that as a matter of law plaintiff waived his lien or was estopped to assert it. They cite, as support for their contention, plaintiff's conduct in 1) clothing his tenant with authority to make the sales by delivering his marketing card to the tenant and 2) never contacting defendants with respect to division of the checks upon the completion of each sale. They rely on *Adams v. Warehouse*, 230 N.C. 704, 55 S.E. 2d 331 (1949).

The plaintiffs in *Adams*, like plaintiff here, made advancements to their tenant to enable the tenant to cultivate and harvest a crop. They too had given the tenant their marketing card. The tenant sold tobacco at defendants' warehouse, and defendants issued their check payable to plaintiffs and the tenant. The tenant cashed the check and applied a portion of the proceeds to payment on a mortgage note signed by him and his landlord. He had not accounted for the balance. The court held that the tenant's possession and production of plaintiffs' marketing card constituted authority for defendants to issue and deliver the check for the purchase price to the tenant; and that by their act of delivering the card to the tenant, plaintiffs consented to the payment to tenant as a matter of law.

It is true that plaintiff here also gave the tenant his marketing card. Here, however, before any check was issued to the tenant for his accustomed share of the sales proceeds, defendant Parrish went to plaintiff's home to advise plaintiff that he had withheld the tenant's check because the tenant owed him money. The following testimony by plaintiff and defendant Parrish is pertinent in this regard: Defendant Parrish testified that he "went to [plaintiff's] home for the purpose of telling him that [he] was holding the check because [the tenant] owed [him] money." He further testified that plaintiff informed him on this occasion that the tenant also owed plaintiff money. Plaintiff testified that defendant Parrish had told

him on this occasion, "Now, if this presents any problem to you or causes you any trouble, I will release the check to you." Plaintiff also testified that he told defendant Parrish, "Just hold it and let me speak to [the tenant] and get some background and I will call you back."

This evidence presents very different circumstances from those in *Adams*, where the check had been delivered to tenant and tenant had converted the proceeds to his own use prior to any direct dealings between the landlord and the warehousemen. While the evidence here may permit a finding that plaintiff waived his lien rights or was estopped to assert them, it does not compel that finding as a matter of law. On the contrary, it clearly permits a finding that defendant Parrish had knowledge of plaintiff's superior claim; was requested by plaintiff not to make any disposition of the tenant's accustomed share pending further instructions from plaintiff; and nevertheless applied the proceeds to his own use or that of the warehouse in disregard of plaintiff's superior lien rights. Justice (later Chief Justice) Bobbitt's statement in *Hall v. Odom*, a case factually similar to the case at bar, is equally applicable here: "Upon the present record, the plaintiff's evidence is sufficient to make out a *prima facie* case, requiring submission to the jury on the issues raised by the complaint and answer; and the undisputed evidence fails to disclose either waiver or estoppel as a matter of law." 234 N.C. at 72, 81 S.E. 2d at 134.

> The trial court should deny motions for directed verdict . . . when, viewing the evidence in the light most favorable to the plaintiff and giving the plaintiff the benefit of all reasonable inferences, it finds " 'any evidence more than a scintilla' to support plaintiff's prima facie case in all its constituent elements."

*Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 638, 640, 272 S.E. 2d 357, 360 (1980). The record contains substantially more than a scintilla of evidence tending to establish in plaintiff a landlord's lien and tending to deny a waiver by plaintiff of his rights under that lien. The trial court thus properly denied defendants' motion for a directed verdict, and defendants' assignment of error thereto is overruled.

[2] Defendants next assign error to the exclusion of certain testimony which they attempted to elicit from plaintiff on cross

Sugg v. Parrish

examination. Plaintiff was questioned regarding transactions by the tenant at a warehouse other than defendants' during the year preceding that of the transactions in question. If allowed, plaintiff would have answered that he had with his tenant the arrangement previously described in both years; that he knew the tenant sold tobacco for him in the preceding year, primarily at a warehouse in Goldsboro; that plaintiff was not present at those sales; that the tenant would bring plaintiff his share of the sales proceeds, sometimes in one check made out jointly and sometimes in a separate check; and that the tenant would furnish plaintiff copies of the tobacco sales bills which had been furnished by the warehouse.

Defendants contend this evidence should have been admitted to show that plaintiff had on prior occasions vested the tenant with authority to sell in the same manner that he did in 1977. We find no prejudicial error in the exclusion of the evidence, however. The evidence clearly had no bearing on the issue as to the existence of plaintiff's lien. There was no evidence tending to show that defendants had knowledge of or placed reliance on a course of dealings established between plaintiff, his tenant and a warehouse other than defendants' during the preceding year. The evidence thus had no relevance as to the issue of whether plaintiff had waived his lien for the 1977 crops. Further, plaintiff testified: "The ... arrangement that we had in 1977 was not the first year we had that arrangement." Thus the substance of the evidence defendants attempted to elicit by this line of questioning was before the jury. This assignment of error is overruled.

Defendants' third assignment of error relates to various aspects of the court's instructions to the jury.

It is well settled that the jury charge must be considered contextually as a whole, and when so considered if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed, we will not sustain an exception for that the instruction might have been better stated.

*Jones v. Development Co.,* 16 N.C. App. 80, 86-87, 191 S.E. 2d 435, 439-440 *cert. denied* 282 N.C. 304, 192 S.E. 2d 194 (1972). We have examined carefully the charge in its entirety, especially the portions complained of. We find no reasonable cause to believe

the jury was misled or misinformed by the court's presentation of the law of the case. Nor do we find merit in defendants' contention that the instructions, taken as a whole, constituted an expression of opinion by the court in violation of G.S. 1A-1, Rule 51(a). This assignment of error is overruled.

**[3]** Defendant finally assigns error to the court's failure to instruct with regard to evidence that the tenant had executed a note for the sum he owed plaintiff and that plaintiff had filed a claim against the tenant's estate for the amount of the note. They contend that "an issue arose" as to whether plaintiff by acceptance of the note had waived any statutory lien he might have. The record indicates that the parties stipulated to the issues. Defendants thus cannot now contend that a separate issue should have been submitted with regard to the note. Further, "[t]he trial [court] is not required to review all of the evidence . . . ." *Maynard v. Pigford,* 17 N.C. App. 129, 130, 193 S.E. 2d 293, 294 (1972). It did review much of the evidence bearing on the stipulated issue of waiver. It also instructed the jury that it was "to take [its own] recollection as to what the evidence was . . . ." It further instructed:

> The fact that I recite to you certain portions of the testimony in my Charge . . . and not other portions . . . does not mean that I place greater importance on that which I lift up to you and less importance on that which I do not bring to your recollection. . . . I charge you that all of the evidence is of equal importance.

Finally, at the end of the charge the court asked if there were further contentions; and defendants made no requests. Under these circumstances we can find in the court's failure to instruct regarding this aspect of the evidence no prejudice to defendants sufficient to warrant a new trial.

No error.

Judges HEDRICK and CLARK concur.