JUANITA W. SHAW v. CITY OF GREENSBORO.

(Filed 12 November, 1919.)

1. **Municipal Corporations—Cities and Towns—Waters—Surface Waters—Extraordinary Rains—Evidence—Instructions.**

   Where a city has been negligent in the construction of a street and maintaining a pipe it had laid in the ground under plaintiff's dwelling for carrying off the water, causing damage to the plaintiff's home, testimony that it was the result of a rainstorm of unusual size for that section of the country is not sufficient to sustain a requested instruction to find for

the defendant if the damages were occasioned by an extraordinary rainfall in the community, the word "unusual," as to the character of the storm, implying that such storms had previously occurred, and not meeting the requirement that they may have not been reasonably anticipated in the future.

2. **Same.**

Where there is evidence that on other occasions the plaintiff's dwelling had been damaged by the negligence of the defendant city in not properly providing for an overflow of surface water, a requested instruction to find under the evidence for defendant, if on one occasion the damages were caused by an extraordinary rainstorm, is properly refused.

3. **Municipal Corporations—Cities and Towns—Waters—Surface Waters—Drains—Damages—Plaintiff Minimize Damages.**

Where damage is sought by the plaintiff by reason of surface water flowing into his dwelling, caused by a hole in a drain pipe, which it was the duty of the defendant city to have properly fixed and maintained, the plaintiff was not required to minimize his damage by fixing the pipe, at his own expense.

APPEAL by defendant from *Lane, J.,* at the February Term, 1919, of GUILFORD.

This is an action to recover damages alleged to have been caused by the negligence of the city of Greensboro in the improvement of certain streets, and in the diversion of surface water, and also by leaving open a certain pipe in the basement of plaintiff's house. The jury returned a verdict of $750 for plaintiff, upon which the court rendered judgment, and the defendant appealed.

The evidence tended to show that in 1915 or 1916 defendant improved North Elm Street by resurfacing it with asphalt, which raised the surface two or three inches; that the curbing on either side of said street was not raised; that the city, in the improvement of said streets, diverted and collected surface water, which was thrown upon the lot of plaintiff. Plaintiff's house was built upon a lot that had been filled in, and under the house pipes were laid, in which was originally a ditch or branch; that these pipes carried surface water from a considerable watershed above; that on one occasion, when these pipes became stopped, hands of the city had gone into plaintiff's basement to unstop the pipes and a hole was left in the pipes, which, plaintiff's witnesses testified, was broken by the city hands, whereas, witnesses for the defendant testified that this pipe was broken by the plaintiff at the time she built her dwelling for the purpose of draining her basement. Plaintiff complained that through this hole water ran into the basement and did considerable damage to her property. The basement had no floor and was not waterproof.

The evidence is not stated in greater detail because there was no motion for judgment of nonsuit and no request to direct a verdict.

The defendant asked the court to instruct the jury as follows:

"If you should find from the evidence in this case, and by its greater weight, that the city of Greensboro has, under the direction of a competent engineer, constructed sufficient catch basins and drains to take care of the diverted surface water that might be reasonably anticipated on North Elm Street, if any has been diverted, and if you should further find that on the occasion complained of by plaintiff there was any damage to her from surface water, and such damage resulted from surface water occasioned by an extraordinary rainfall in the community, then the defendant would not be liable to plaintiff for such injury, and it would be your duty to answer the first issue 'No.' "

This instruction was refused except as given in the charge, and the defendant excepted.

"The court charges you that it is a general principle of law that where one is injured by the act of another, it is his duty to do what reasonable care and business prudence requires to minimize the loss; and if you find in this case that city had broke in the pipe in plaintiff's basement, and that plaintiff could, at small expense, have repaired the broken pipe, it was her duty to have done so and reduced her damage so far as possible."

The instruction was refused and defendant excepted.

The question involved in the last prayer was also raised by exceptions to the refusal to admit certain evidence.

*J. A. Barringer and R. C. Strudwick for plaintiff.*
*Charles A. Hines for defendant.*

ALLEN, J. There is no evidence upon which the first prayer for instruction can be predicated, as the only reference to an extraordinary rainfall in the record is that several witnesses testified that they went to the house of the plaintiff in the summer of 1916 and saw a large quantity of water in the basement, and that the occasion to which they referred was at the time of a rainstorm of unusual size for this section. They also testified that they had seen water standing about the house at other times when the rainfall was moderate, and usual in quantity.

"An 'unusual flood of rain' does not indicate a greater or more severe rain than has theretofore occurred, but rather such a rain as does not usually, or but rarely occurs" (*Denver v. Rhodes*, 9 Cola, 564), and it was the duty of the defendant to provide for such heavy rains as might reasonably be anticipated, although not of frequent occurrence. *Wright v. Wilmington*, 92 N. C., 159; *Emry v. R. R.*, 102 N. C., 226.

In the last case cited the court approved the following instruction to the jury as to the duty of a railroad to provide culverts of sufficient size to carry off water: "It was the duty of defendant to have constructed

its culvert so it would carry off the water of the stream under all ordinary circumstances, and the usual course of nature, even to the extent of such heavy rains as are ordinarily expected, unless it has the right of grant, actual or presumed, to make it smaller. If the defendant so constructed the culvert that it was not sufficient to carry off the water of the stream under ordinary circumstances (and by ordinary circumstances is meant the usual rainfall), even if such heavy rains are occasional, and by reason of insufficient culvert the plaintiff's land was overflowed, the answer to the first issue should be 'Yes,' unless the defendant had acquired the right to pond water on the plaintiff's land," and the same principle is applicable to the defendant.

Again, the instruction could not have been given in any event, because it required the jury to answer the first issue—Was the plaintiff's property damaged by the negligence of the defendant, as alleged in the complaint?—"No," if there was an extraordinary rainfall on one occasion causing damage, and to ignore evidence of damage at other times, when the rainfall was moderate.

The general principle, embodied in the second prayer for instruction, is fully recognized, that the injured party should do what reasonable care and business prudence requires to reduce the loss (*Yowmans v. Hendersonville,* 175 N. C., 578), but it has no application where the wrongdoer has the opportunity to remedy the wrong, and avoid damage, and when it would require the expenditure of money by the injured party. *Roberts v. Baldwin,* 155 N. C., 281; *Waters v. Kear,* 168 N. C., 246; *Cardwell v. R. R.,* 171 N. C., 366.

The employees of the defendant could have repaired the pipe at the time they made the hole in it, or afterwards, and it was their duty to do so, and the city cannot escape liability for damages caused by its negligence because of the failure of the plaintiff to expend money to do something it ought and could have done.

No error.