E. F. LYDA AND HIS WIFE, MATTIE E. LYDA, v. TOWN OF MARION, A MUNICIPAL CORPORATION.

(Filed 15 January, 1954.)

**1. Waters and Watercourses § 5: Trespass § 1e: Municipal Corporations § 56—**

A cause of action against a municipality to recover for the diversion of surface waters upon plaintiff's lots incident to the paving of the street and the construction of gutters, without allegation of negligence, is a cause of action to recover for a continuing trespass and comes within the provisions of the charter of the municipality requiring any claim of damages against it to be filed within 180 days of the infliction of the injury.

**2. Pleadings § 24—**

Plaintiffs must make out their case *secundum allegata.*

**3. Appeal and Error § 8—**

An appeal of necessity must follow the theory of the trial in the lower court.

**4. Eminent Domain § 3: Municipal Corporations § 56—**

Allegations and evidence to the effect that defendant municipality caused drainage ditches to be dug across plaintiffs' land from catch basins on the street to a branch in the rear of plaintiffs' property makes out a cause of action for a partial taking of plaintiffs' land, and such action does not come within the purview of the municipal charter requiring the filing of notice of a claim against the municipality within a specified time.

WINBORNE, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs from *Clement, J.,* at July Term, 1953, of Mc-DOWELL.

Civil action to recover damages for alleged injuries to and partial taking of property resulting from street improvements.

The plaintiffs allege in their complaint two causes of action: (1) a "continuing and permanent trespass upon and taking of" the property of plaintiffs by surface waters allegedly gathered and concentrated in artificial drains on defendant's streets and cast on plaintiffs' property; and (2) a "permanent trespass and taking" of plaintiffs' property by digging and leaving open two ditches across plaintiffs' property to carry away surface waters gathered and concentrated on the defendant's streets.

The defendant, answering, denies the material allegations of the complaint and pleads in bar the failure of the plaintiffs to file written notice of their claim within 180 days after the "happening or infliction of the injury complained of," as provided by the charter of the defendant town, as amended by Chapter 253, Section 1, Private Laws of 1941.

The plaintiffs' evidence may be summarized as follows: In 1947, the plaintiffs bought two adjoining lots on Sinclair Avenue in the town of Marion. On one lot they built their residence in 1949; the other lot is still vacant. Sinclair Avenue runs from south to north in front of these lots, which lie along the east side of the Avenue facing toward the west. The residence lot is north of the vacant lot. The lots run back toward Vale Street a depth of 177 feet on one side and 168 feet on the other, and adjoin in the back the residence lots of Elliott and Pittman which face east on Vale Street. A small branch, or natural stream, flows across the rear of the plaintiffs' lots, behind the residence and about 100 feet from Sinclair Avenue. The course of the branch is from north to south, straight across the back of the lots. Thus some 68 to 77 feet of the rear of the plaintiffs' lots lie east of the branch, on the side next to Vale Street. Sinclair Avenue curves sharply west directly in front of plaintiffs' residence, and runs thence almost due west upgrade to Teal Street, a distance of about 300 feet, and dead-ends into Teal Street, which runs north and south. From this dead-end intersection, Teal Street runs northwardly upgrade 155 feet to Lincoln Avenue, which runs east and west.

When the plaintiffs bought their lots in 1947, Sinclair Avenue, Teal Street, and Vale Street were unpaved. They were also unpaved when plaintiffs built their home in 1949. All three of these streets were paved in the spring and summer of 1951. The adjacent land to the north and west is considerably higher than plaintiffs' lots, and a knoll to the south is slightly higher than the parts of the lots facing Sinclair Avenue. To the north, east, and south of the back parts of the plaintiffs' lots the ground is higher, but the rear of the Elliott lot, directly back of plaintiffs', is lower.

Before the streets were paved the rain water soaked in the streets or ran off on adjoining owners "all along." None came on the rear of plain-

tiffs' lots from the direction of Vale Street; it ponded in the rear of the Elliott lot. There was no ponding of water in plaintiffs' front yard before the paving. There was an 8 or 10-inch terra cotta culvert under Sinclair Avenue opposite the vacant lot, but it was crushed in or stopped up, and no substantial amount of water flowed onto the vacant lot. There was no ditch from the culvert across the lot. The former owner, Lawing, had "aimed to build there."

When these three streets were paved in 1951, they were given the usual slope from center downward to the sides. From Lincoln Avenue down Teal Street to Sinclair Avenue, and thence along that Avenue downgrade to beyond the plaintiffs' lots, there are raised-edge curbs about 6 inches high along the outside edge of the pavement, forming rim-shaped gutters in which rain water falling in these streets is channeled to outlets. There is no catch basin or outlet on Sinclair Avenue above plaintiffs' lots. At private driveway entrances above plaintiffs' lots, except at one place, the paving is sloped to about the same height as the top of the curb. This arrangement keeps most of the surface water in the street and channels it past the upper driveways on down toward plaintiffs' lots. However, the entrance to plaintiffs' upper drive, located in the curve, was not sloped up on the sides like most of the others. This entrance is 17 feet wide, and a 4-foot portion of it on the lower side was left flat, the result being that in ordinary heavy rains surface water has overflowed through this 4-foot flat strip of driveway entrance (all of which is on street property and is a part of the paved street), and ponded in plaintiffs' front yard, so that elevated planks and boards had to be put down by the plaintiffs in order to get across the yard without wading. This ponded water has seeped into the basement, cracked the basement walls, and has so wet the floor that things stored in the basement had to be taken off the floor and put on stilts.

When the defendant paved these streets it removed the 8 or 10-inch terra cotta culvert from under Sinclair Avenue and replaced it with an 18-inch concrete culvert and catch basin, located approximately in front of the center of plaintiffs' vacant lot. Without plaintiffs' permission or consent, the defendant's employees dug a ditch from this culvert outlet down through the center of the vacant lot to the bank of the branch about 100 feet away. This ditch, about two feet wide and two feet deep, ended some 15 or 20 feet from the branch channel and 8 or 9 feet above the normal water level. Water coming down the ditch has washed out trenches and gullies in different directions from the end and top of the ditch down to the water level in the branch. This has caused the branch bank to cave in, and shrubs and trees on the branch bank have been undermined. Besides, the ditch does not hold all the water coming into it from

the Sinclair Avenue catch basin and culvert. This water overflows the side banks onto the vacant lot where flowers and shrubs were planted.

On Vale Street, the defendant installed a new culvert on the Pittman-Elliott boundary line, and with their permission dug a ditch from that culvert down their line to the rear of their lots and, without the permission or consent of the plaintiffs, continued the ditch on across plaintiffs' land to the branch.

At the close of the plaintiffs' evidence the defendant moved for judgment as of nonsuit. The motion was allowed, and from judgment of dismissal based on such ruling the plaintiffs appealed.

C. David Swift for plaintiffs, appellants.
Proctor & Dameron for defendant, appellee.

Johnson, J. While the judgment does not so state, it is manifest the nonsuit was allowed below on the ground that the plaintiffs failed to file timely notice of claim with the defendant prior to the commencement of the action as required by the charter of the defendant town, as amended by Chapter 253, Section 1, Private Laws of 1941, which, in so far as material, is as follows:

"No action for damages against the Town of Marion of any character whatever, to either person or property, shall be instituted against said town unless within one hundred and eighty days after happening or infliction of the injury complained of, the complainant, his executors or administrators, . . . shall have given notice to the Board of Aldermen of said Town of such injury, in writing, stating in such notice the date and place of happening, or infliction of said injury, the manner of such infliction, the character of the injury, and the amount of damages claimed therefor, . . ."

The plaintiffs' evidence shows that the paving project about which they complain, and all grading and digging in connection therewith, was completed during or prior to July, 1951. The written notice offered in evidence by the plaintiffs was mailed to the defendant 22 July, 1952.

Upon the basis of this evidence the defendant urges that the plaintiffs' failure to prove that notice was given within 180 days after the "happening or infliction of the injury complained of" is a complete bar to both causes of action.

The defendant cites and relies on a line of decisions of which these are representative: *Dayton v. Asheville,* 185 N.C. 12, 115 S.E. 827; *Biggs v. Asheville,* 198 N.C. 271, 151 S.E. 199; and *Wallace v. Asheville,* 208 N.C. 74, 179 S.E. 18, holding in effect that a cause of action based on continuing trespass (G.S. 1-52, subsection 3) accrues and takes its rise at the time the first substantial injury is sustained or when the first appreciable damage is done.

LYDA *v.* MARION.

In the case at hand, as shaped by the allegations of the complaint and as developed by the evidence, it would seem that the plaintiffs failed to make out a case for relief of any kind in respect to the alleged casting or ponding of waters on the dwelling-house lot. As to this phase of the case, the plaintiffs seek permanent damages solely on the theory of a continuing trespass. All the evidence discloses that the first substantial injury occurred more than 180 days prior to the date the plaintiffs filed notice of claim with the defendant. Therefore, the plaintiffs' failure to file timely notice as required by the charter of the defendant town bars them from recovering damages to the residence lot on the theory of continuing trespass, as alleged. *Dayton v. Asheville, supra; Biggs v. Asheville, supra; Wallace v. Asheville, supra; Peacock v. Greensboro,* 196 N.C. 412, 146 S.E. 3.

True, the evidence discloses that the street was so paved at the entrance into plaintiffs' driveway as to leave the gutter line flat for a width of about 4 feet at the lower side of the entrance and that defendant continues to maintain the gutter line in that condition, thereby causing the surface water which comes down from the upper reaches of the street to be channeled off through this opening and thrown onto the plaintiffs' residence lot, with no outflow facilities of any kind. But nowhere in the complaint do the plaintiffs allege negligence on the part of the defendant in perpetuating or maintaining this condition. *Shaw v. Greensboro,* 178 N.C. 426, 101 S.E. 27; *Eller v. Greensboro,* 190 N.C. 715, 130 S.E. 851; *Gore v. Wilmington,* 194 N.C. 450, 140 S.E. 71. Nor do the plaintiffs seek by injunction to have the channel closed on the theory of an abatable nuisance.

It was incumbent on the plaintiffs to make out their case *secundum allegata. Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14; *McCoy v. Carolina Cent. R.,* 142 N.C. 383, 55 S.E. 270. See also *Miller v. Grimsley,* 220 N.C. 514, 17 S.E. 2d 642; *Bank v. Caudle, post,* p. 270; and G.S. 1-141. The appeal of necessity must follow the theory of the trial in the court below. *Leggett v. College,* 234 N.C. 595, 68 S.E. 2d 263; *Caddell v. Caddell,* 236 N.C. 686, 73 S.E. 2d 923.

However, the complaint alleges in the second cause of action, and the evidence discloses, a physical entry upon and partial taking of land by the digging of two drainage ditches across the plaintiffs' vacant lot from the catch basins on Sinclair Avenue and Vail Street to the branch. With us the rule is that a charter provision in respect to notice, like the one involved here, "does not include a claim for compensation arising out of physical appropriation of private property for public use." *Stephens v. Charlotte,* 201 N.C. 258, 261, 159 S.E. 414. See also *Hoyle v. Hickory,* 167 N.C. 619, bot. p. 621, 83 S.E. 738.

This distinguishes the decisions relied on by the defendant.  The evidence adduced below was sufficient to take the case to the jury on the issue of partial taking and permanent damages for digging and keeping open the ditches across the vacant lot.  *Stephens v. Charlotte, supra.*  Therefore, the judgment below dismissing both causes of action *in solido* must be reversed, and it is so ordered.

Reversed.

WINBORNE, J., took no part in the consideration or decision of this case.