ROBERT McNEILL v. A. G. McDOUGALD, JR.

(Filed 25 May, 1955.)

**1. Appeal and Error § 40b: Trial § 51—**

An appeal will lie from the action of the trial court in setting aside the verdict and granting a new trial for error of law in failing to charge the jury on a substantive feature of the case.

**2. Trial § 31b—**

It is the duty of the trial judge to declare and explain the statutory law as well as the common law on the substantial features of the case arising on the evidence, even though there be no special request for instructions, and the court's failure to do so is prejudicial error.

**3. Agriculture § 5a—Right of lienholder to seize crop prior to maturity of lien under G.S. 44-63 held substantial feature of this case.**

Plaintiff landlord instituted this suit to recover for the wrongful seizure of his tobacco and conversion thereof by the holder of agricultural liens executed by plaintiff's wife and their tenant. Defendant contended that plaintiff was estopped to deny that the tobacco belonged to his wife and that defendant had the right to seize the tobacco before the maturity of the liens executed by the wife and the tenant under the provisions of G.S. 44-63. *Held:* The jury's finding that defendant wrongfully seized and converted the tobacco to his own use under instructions as to estoppel does not necessarily determine that defendant had no lien on the tobacco, since even though plaintiff were estopped to deny his wife's title, defendant would not have the right to seize the tobacco prior to the maturity of the liens except under the provisions of G.S. 44-63, and therefore the failure of the court to charge the provisions of the statute is prejudicial error which is not rendered immaterial by the jury's answer to the issue.

**4. Appeal and Error § 8—**

An appeal *ex necessitate* follows the theory of the trial in the court below.

BOBBITT, J., dissents.

' APPEAL by plaintiff from *Hubbard, Special Judge,* January Term 1955 of COLUMBUS.

Civil action to recover actual and punitive damages for the alleged unlawful and malicious seizure and conversion of plaintiff's tobacco crop.

This is a summary of the allegations of plaintiff's complaint: In the year 1951 plaintiff raised and owned a tobacco crop grown on 2.6 acres of land: that neither his wife nor any other person owned or claimed any interest therein. That during the period of harvesting his tobacco crop, he suffered the loss of a leg, and was unable temporarily to attend to his tobacco. That most of his tobacco had been cured, and placed in a packhouse. That the defendant, who knew plaintiff's physical condition, came to plaintiff's land, and, claiming that he had an account against plaintiff's wife, unlawfully and maliciously seized plaintiff's entire tobacco crop, and converted it to his own use.

Plaintiff's evidence, material for decision of this case, tends to show these facts: In 1951 he had a tobacco allotment of 2.6 acres. He furnished the fertilizer; one Henry "Bully" Burney was to do the work and the money from the sale of the tobacco crop was to be equally divided between them. The Johnson Cotton Company furnished him fertilizer and material, and had a paper on the crop. He made no purchases from the defendant, and owed the defendant nothing. His wife had a tobacco allotment of .4 of an acre on other land, a separate crop. In 1951 Burney did the work on the 2.6 acres of tobacco, and gave the defendant an agricultural lien on his half of the crop. In the early part of 1951 plaintiff refused Burney's and also the defendant's request to release his landlord's lien on Burney's half of the tobacco in favor of the defendant. Josephine McNeill also gave the defendant an agricultural lien on this same 2.6 acres of tobacco as well as on other security. This lien stated it was for advances made by defendant to plaintiff and his wife, that both were indebted to him therefor, but Josephine McNeill alone signed it. Defendant requested plaintiff to sign this lien. He refused to do so. He did not tell defendant to let his wife have anything, that she was in charge of the crop. He did not say he would be responsible for any advances to her. Both liens were due and payable on 15 August 1951.

On 6 August 1951, A. G. McDougald, Jr., the defendant here, instituted a civil action against Henry Burney and Josephine McNeill to enforce the liens they gave him. Plaintiff is not a party to this action. At the time of issuance of the summons, McDougald claimed the delivery of the tobacco grown on the 2.6 acres of land, as well as the other security, and in his affidavit for delivery stated, he "believes that unless possession is taken that his security will vanish." In the affidavit he

did not state that the obligations of Burney and Josephine McNeill were due and unpaid. The Clerk of the Superior Court issued claim and delivery papers. Plaintiff's evidence does not show when the tobacco was taken, except that it was taken in August. Part of plaintiff's evidence tends to show that the tobacco was taken by the Sheriff and delivered to McDougald: other parts of plaintiff's evidence tends to show that McDougald and his agents took the tobacco. Three barns of tobacco were taken, two belonging to plaintiff and Burney, and one to Josephine McNeill.

McDougald was granted by the Clerk of the Superior Court an extension of time to file his complaint. He filed it on 25 August 1951, and alleged that the obligations of Burney and Josephine McNeill were due and unpaid, and that Burney was farming lands owned or controlled by Josephine McNeill.

During the trial plaintiff admitted that one-half of the tobacco taken belonged to Burney. Defendant sold the tobacco taken at the Banner Warehouse, and has kept the proceeds of sale.

The defendant alleged, and offered evidence tending to show these facts: That the plaintiff represented to him that the crops involved in this action were owned by his wife, Josephine McNeill, that she was going to run the farm in 1951, and that he was going to have nothing to do with it, that his wife was in charge and his signature was not needed, and that she had full power and authority to make arrangements for advances and supplies to make the crops and to execute any agricultural liens upon the crops. That plaintiff was on crutches at his home. That prior to 1951 defendant had a delinquent account against Henry Burney, and had instituted action against him. That plaintiff and his wife wanted to secure Burney's unpaid account to the defendant and to secure advances and supplies to make the 1951 crop. That the defendant, relying upon the representations of plaintiff that all the crops were the property of Josephine McNeill and that she was in charge, made advances to her and Burney, and that she and Burney executed and delivered to him agricultural liens upon their interests in all the crops, securing the advances and Burney's past account. That he asked plaintiff to sign the lien, and plaintiff replied, deal with his wife, she is the one.

In July defendant saw the tobacco burning up in the field for two or three weeks, and it was not being gathered for curing. About the first of August defendant saw the tobacco was out of the field, except for suckers. He went to a barn. "You could throw cats through the logs." There was a handful of fire. The tobacco was black and rotten. The defendant alleged in his further answer, "said parties were doing away with the tobacco crops or causing them to deteriorate." He instituted

action on 6 August 1951 against Burney and Josephine McNeill, and seized the tobacco crop under claim and delivery. Josephine McNeill gave defendant the tobacco allotment cards of plaintiff and herself. Upon these cards defendant sold the tobacco he seized upon the floor of the Banner Warehouse for $281.31, and credited one-half of it to plaintiff's account and one-half to his wife's.

These are the issues submitted to the jury, with the answers thereto:

"1. Did the defendant wrongfully seize and convert to his own use the tobacco of the plaintiff, Robert McNeill? Answer: Yes.

"2. If so, was the action of the defendant wilful and malicious, or in a wanton and reckless disregard of Robert McNeill's rights? Answer: Yes.

"3. What amount, if any, in actual damages is the plaintiff entitled to recover? Answer: $140.65.

"4. What amount, if any, in punitive damages is the plaintiff entitled to recover? Answer: $500.00."

Prior to the charge the defendant requested an instruction upon equitable estoppel. The request was granted by the Trial Court, which gave an elaborate charge on equitable estoppel in dealing with the first issue, saying in substance that if the jury found, by the greater weight of the evidence, the burden being upon the defendant, that the facts in respect to estoppel were as contended by defendant, they would answer the first issue No.

On the 4th issue of punitive damages the Trial Court charged: "McNeill contends that under all the facts and circumstances in the case you should take into consideration the fact, if it was a fact, that the Claim and Delivery Proceeding was taken out before the lien was due . . ."

At the end of the charge the defendant requested the court to charge the jury that "a mortgagee may seize a chattel even before the obligation becomes due under circumstances showing an impairment of security." The request was refused.

Upon the coming in of the verdict the defendant moved to set the verdict aside and for a new trial on the ground that the verdict was contrary to the greater weight of the evidence, was excessive and for errors in the charge.

Whereupon, the Trial Court entered an order setting the verdict aside and granting a new trial upon the ground that it inadvertently failed to charge the law as contained in G.S. 44-63.

Plaintiff appealed, assigning error.

*Powell & Powell for Plaintiff, Appellant.*
*Oliver Carter and Hewlett & Williams for Defendant, Appellee.*

PARKER, J.  When a verdict is set aside for error in law, and not as a matter of discretion, the aggrieved party may appeal, provided the error is specifically designated. *Akin v. Bank,* 227 N.C. 453, 42 S.E. 2d 518; *Powers v. City of Wilmington,* 177 N.C. 361, 99 S.E. 102.  Here, the Trial Judge stated that he set the verdict aside, and granted a new trial on the ground that he inadvertently failed to charge the law as contained in G.S. 44-63.  This suffices for the appeal.

G.S. 44-63 reads: "If any person in the counties mentioned in the preceding section,"—the county where the tobacco crop here was raised and taken is named in the preceding section—"after executing a lien as aforesaid for advances, fails to cultivate the lands described therein, or does any other act calculated to impair the security therein given, then the person to whom the lien was executed is relieved from any further obligation to furnish supplies, and the debts and advances theretofore made become due and collectible at once, and the person to whom the instrument was executed may proceed to take possession of, cultivate and harvest said crops, and to sell the other property described therein.  It is not necessary to incorporate such power in the instrument, but this section is sufficient authority for the same.  The sale of any property described in any instrument executed under the provisions of this chapter may be made at any place in the county where such property is situated after ten days' notice published at the courthouse door and three other public places in said county."

A failure of the court to charge the law on the substantial features of the case arising on the evidence is prejudicial error, even though there be no request for special instructions to that effect.  *Barnes v. Caulbourne,* 240 N.C. 721, 83 S.E. 2d 898; *Howard v. Carman,* 235 N.C. 289, 69 S.E. 2d 522; *S. v. Bryant,* 213 N.C. 752, 197 S.E. 530; G.S. 1-180.  This is a substantial legal right.  *Spencer v. Brown,* 214 N.C. 114, 198 S.E. 630.

It is the duty of the judge to declare and explain the statutory law as well as the common law on the substantial features of a case arising on the evidence.  *Barnes v. Teer,* 219 N.C. 823, 15 S.E. 2d 379; *Kolman v. Silbert,* 219 N.C. 134, 12 S.E. 2d 915; *Bowen v. Schnibben,* 184 N.C. 248, 114 S.E. 170.

Where a judge's charge eliminates from the case a substantial part of it, which would necessarily prejudice one of the parties, it is prejudicial error.  *Bowen v. Schnibben, supra; Matthews v. Myatt,* 172 N.C. 230, 90 S.E. 150.

We said in the recent case of *Hall v. Odom,* 240 N.C. 66, p. 70, 81 S.E. 2d 129: "It is not to be understood that a landlord cannot by agreement, express or implied, waive his lien, or by his acts and conduct be estopped from asserting his lien."  See also *Adams v. Warehouse,* 230

N.C. 704, 55 S.E. 2d 331; 52 C.J.S., Landlord and Tenant, Sections 650 and 819.

The essence of McDougald's defense is that the plaintiff by his acts, words and conduct is estopped to deny that the tobacco crop was the property of his wife, Josephine McNeill; that McDougald had liens on it for supplies and advances executed by her and Burney upon their respective interests therein, in conformity with G.S. 44-62; that Josephine McNeill and Burney by permitting the tobacco to burn up in the field and by improper curing of it, did acts impairing the security of his liens, and thereby pursuant to G.S. 44-63 their debts secured by these liens became due and collectible at once, and he had the right to take possession of and sell the tobacco crop.

It is plain that the provisions of G.S. 44-63 providing that the lien shall become due and collectible at once, if the person executing the lien does any act calculated to impair the security therein given, has no application, unless there is a valid lien. It is also plain, that if the plaintiff is estopped to deny that defendant had valid liens, that fact alone would not make the liens due and collectible prior to their maturity date.

The judge charged the jury, that if they found by the greater weight of the evidence, the burden being upon the defendant, that the facts in respect to estoppel were as contended by the defendant, they would answer the issue: "Did the defendant wrongfully seize and convert to his own use the tobacco crop of the plaintiff Robert McNeill," No.

Does the answer to the first issue establish the fact that defendant had no valid liens on the tobacco crop, and make the judge's failure to charge the provisions of G.S. 44-63 as to when a lien could become due and collectible at once under certain circumstances immaterial?

The first issue does not squarely present to the jury the sole question as to whether plaintiff was estopped to deny that the defendant had valid liens—it presents the question as to whether or not there was a wrongful seizure and conversion. It seems clear that in the trial below the plaintiff contended that the defendant wrongfully seized the tobacco crop before the liens were due, because the judge in charging on the issue of punitive damages so stated, and because at the end of the charge the defendant requested the judge to charge, "that a mortgagee may seize a chattel even before the obligation becomes due under circumstances showing an impairment of security," which request was refused. If the defendant had valid liens, and seized the tobacco crop before the liens were due, it was a wrongful seizure.

It seems that one of the essential theories of the trial below in respect to the first issue was this: the plaintiff contended that there was a wrongful seizure before the liens were due; the defendant contended

that the liens were due and collectible under the provisions of G.S. 44-63. This theory is as deeply imbedded in the first issue as the theory of estoppel. The judge eliminated from the case this substantial part of the defendant's defense supported by his evidence that his liens were due and collectible when he seized the tobacco crop, by failing to charge the provisions of G.S. 44-63. Such failure in our opinion was prejudicial, for the jury could well have found from the evidence and the charge that plaintiff was estopped, but that the defendant, according to plaintiff's contention, wrongfully seized and converted the tobacco crop before the liens were due, and have answered the first issue Yes, in the absence of any charge by the court that plaintiff's liens had become due and collectible at once if the security given in the liens was being impaired. The able judge below was apparently of the same opinion for he set the verdict aside as a matter of law because he failed to charge the provisions of G.S. 44-63. An appeal *ex necessitate* follows the theory of the trial in the court below. *Lyda v. Marion,* 239 N.C. 265, 79 S.E. 2d 726.

When the case is tried again it would seem preferable to submit issues of estoppel, and as to whether the liens had become due and collectible when the tobacco crop was seized.

It must not be understood that we are expressing any opinion upon the evidence, or deciding that an issue on punitive damages should or should not be submitted to the jury. We are concerned with this one question of law: Was G.S. 44-63 a substantial feature of the case arising on the defendant's evidence? In our opinion, it was on the evidence before us, and we think that the controversy should be submitted to another jury with specific instructions on G.S. 44-63.

Affirmed.

BOBBITT, J., dissenting: A verdict is interpreted by reference to the pleadings, the evidence and the judge's charge. *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493.

Defendant claimed the tobacco seized by him by virtue of a chattel mortgage executed by plaintiff's wife. Defendant had no chattel mortgage executed by plaintiff.

The complaint contains no allegation that the defendant's seizure of plaintiff's tobacco was wrongful because it occurred before the debt became due. The sole theory of the complaint, as I read it, is that the defendant had no lien *at all* on plaintiff's tobacco. Evidently this was plaintiff's contention at the trial. This excerpt from the charge epitomizes the instructions given by the court relating to the first issue: "If you find from the evidence and by its greater weight that the tobacco in question that was taken belonged to Robert McNeill, then the first

issue should be answered in Robert McNeill's favor, unless you find that Robert McNeill is estopped now to claim that tobacco, or the proceeds of that tobacco, or its value." The jury having answered the first issue "no," the only conclusion that I can reach is that the jury found that the defendant had no lien on the plaintiff's tobacco. On this first issue, the crucial question for the jury arose on the defendant's plea of estoppel.

Furthermore, on the second issue the judge charged the jury: "If you find from the evidence and by its greater weight that Mr. McDougald knew that the tobacco in question was the property of Robert McNeill, *and knew that he had no claim to it,* but took the tobacco in an effort to force Robert McNeill to assume and pay for the debts of his wife, or Henry Burney, or otherwise acted in a wanton and reckless disregard of the rights of Robert McNeill, then you should answer the second issue yes." (Italics added.) On the second issue the crucial question was whether the defendant knew that he had no lien on the plaintiff's tobacco.

The court made no reference *at all* in his instructions bearing on the first and second issues to whether plaintiff's wife's debt had matured when the defendant seized the plaintiff's tobacco.

The only reference I can find in the charge to the fact that the seizure of the plaintiff's tobacco occurred before plaintiff's wife's debt matured is included in this summary of the court of plaintiff's contentions in relation to the fourth (punitive damage) issue. "McNeill contends that under all the facts and circumstances in the case you should take into consideration *the fact, if it was a fact, that the Claim and Delivery Proceeding was taken out before the lien was due,* and that Mr. McDougald had no legal right to take it out; that you should further take into consideration what he contends to be a fact that he, Robert McNeill, had refused to sign the mortgage, or lien, and that Mr. McDougald knew that, and that he still took his, McNeill's, property under process of the Court without any proper cause or right." (Italics added.)

If the defendant knew the tobacco belonged to the plaintiff, and seized it under color of claim and delivery proceedings against the plaintiff's wife, without making the plaintiff a party to such proceedings, it would seem that the fact that her debt was not even due was a circumstance properly to be considered, along with the other circumstances relevant to the fourth issue.

In my opinion, G.S. 44-63, which presupposes the existence of a valid lien, had no bearing on the issues raised by the pleadings and answered by the jury under the instructions of the court.