FLORENCE R. WESTMORELAND v. WILLIAM HAROLD GREGORY AND EUGENE ROBERT GREGORY.

(Filed 16 June, 1961.)

1. **Automobiles § 41b—**

Evidence tending to show that defendant driver had drunk some whiskey and beer and was driving in excess of the legal speed limit on the wrong side of the road, when he lost control of the car on a curve so that the car ran off the road and overturned to the injury of plaintiff passenger, *is held* sufficient to be submitted to the jury on the issue of defendant driver's negligence.

2. **Automobiles § 55—**

Conflicting evidence relating to defendant owner's liability for the driving of his nephew under the family purpose doctrine held to raise the issue for the determination of the jury.

3. **Automobiles § 49—**

Conflicting evidence as to whether plaintiff passenger was guilty of contributory negligence in failing to warn defendant driver of apparent danger and in failing to remonstrate with him in regard to his excessive speed, and in distracting his attention by kissing him while he was attempting to negotiate a curve, *is held* to raise the issue of plaintiff's contributory negligence for the determination of the jury.

4. **Negligence § 28: Trial § 33—**

A charge which reviews the respective contentions of the parties in regard to the evidence of contributory negligence, defines contributory negligence in general terms, but fails to instruct the jury as to what facts in evidence would constitute the basis for an affirmative finding upon the issue, must be held prejudicial in failing to apply the general law to the facts in evidence.

5. **Same—**

Where defendant introduces evidence tending to support his plea of contributory negligence on the part of plaintiff, a passenger in defendant's car, the failure of the court to charge the jury as to the duty imposed by law upon a guest passenger must be held for prejudicial error.

6. **Trial § 33—**

The trial court is required to relate and apply the law to the variant factual situations presented by the evidence, and, even in the absence of a request for instructions, must charge the law on all the substantial features of the case arising on the evidence. G.S. 1-180.

APPEAL by defendants from *Hooks, Special Judge,* September, 1960, Civil Term, of HARNETT.

Plaintiff's action is to recover damages for personal injuries she received April 30, 1959, 3:30-4:00 p.m., while a passenger in a 1957 four-door Ford automobile owned by Eugene Robert Gregory and operated by William Harold Gregory. While proceeding towards Lillington on McDougald Road, a rural paved road, the car ran off the road and overturned. This occurred some three miles west of Lillington.

Plaintiff alleged the mishap was proximately caused by the negligence of William Harold Gregory, hereafter referred to as "Harold Gregory," in that he lost control while attempting "to round" a curve while driving at an excessive and unlawful speed and without keeping a proper lookout. She alleged Eugene Robert Gregory, hereafter referred to as "Buddy Gregory," although not present when the mishap occurred, was liable under the family purpose doctrine for the negligence of Harold Gregory.

Defendants, in separate answers, denied the mishap was proximately caused by the negligence of Harold Gregory, and denied that Buddy Gregory was liable for the negligence, if any, of Harold Gregory, and pleaded contributory negligence on the part of plaintiff. In addition, Buddy Gregory asserted a cross action against plaintiff for damages to his car, alleging substantially the same facts as to plaintiff's negligence as those on which defendants based their pleas of contributory negligence.

Each defendant alleged plaintiff was negligent in one or more of these respects: In riding and continuing to ride in the automobile "knowing that William Harold Gregory had been drinking whiskey and beer to the extent that it would affect his ability to operate the car; in that she failed and neglected to keep a proper lookout and to warn the defendant William Harold Gregory of the danger ahead which she saw or, in the exercise of reasonable care, should have seen; in that she rode and continued to ride in the automobile without protest or remonstrance; and in that she grabbed the defendant William Harold Gregory and kissed him as he was approaching a curve, thereby distracting his attention and causing him to lose control of the car which left the roadway and wrecked."

Issues as to the negligence of Harold Gregory, the contributory negligence of plaintiff, the liability of Buddy Gregory under the family purpose doctrine, were answered in favor of plaintiff, and the jury awarded damages in the amount of $7,000.00. Issues relevant to Buddy Gregory's counterclaim were also submitted. However, the jury, under the court's instructions, did not reach these issues.

From judgment for plaintiff, in accordance with the verdict, defendants excepted and appealed.

*Wilson & Bain for plaintiff, appellee.*
*Dupree, Weaver, Horton & Cockman for defendants, appellants.*

BOBBITT, J. Defendants' motions for judgments of nonsuit were properly overruled. The evidence, when considered in the light most favorable to plaintiff, was amply sufficient to support findings that Harold Gregory's actionable negligence proximately caused the mishap and that Buddy Gregory was liable therefor under the family purpose doctrine. Whether plaintiff was contributorily negligent, as alleged by defendants, was for jury determination upon sharply conflicting evidence.

On April 30, 1959, Harold Gregory was twenty years old. He had been in the military service from 1955 until April 28, 1958. From November, 1958, until April 30, 1959, he resided in the home of Buddy Gregory, his uncle, on the Sanford Road (Highway 421), west of Lillington. During this period, he worked for Buddy Gregory in his motor boat business on Main Street in Lillington, referred to as Buddy's Marine, where Jack Westmoreland, plaintiff's husband, was employed by Buddy Gregory as a mechanic.

On April 30, 1959, plaintiff was thirty-four years old. She had married Jack Westmoreland in December, 1946. They, and their three children, lived on First Street in Lillington. Buddy Gregory's home was "on the opposite side of town" from the Westmoreland residence.

Harold Gregory, also Buddy Gregory and his wife, had visited in the Westmoreland home. There is no evidence of any impropriety in the relations of Harold Gregory and plaintiff prior to April 30, 1959. Harold Gregory testified he had played cards with the Westmoreland boys in the Westmoreland home.

Jack Westmoreland left Lillington during the morning of April 30, 1959, on a business trip. He was to go, and did go, to Durham and from there to Greensboro. At that time, Jack Westmoreland had, in his home, some "bootleg" whiskey. Harold Gregory went to the Westmoreland home between 1 and 2 p.m. When he arrived, and while he was there, plaintiff was the only other person in the Westmoreland home. Harold Gregory had a drink of the Westmoreland whiskey while he and plaintiff sat in the Westmoreland home and watched a television program. Apart from these facts, the testimony of plaintiff and the testimony of Harold Gregory as to what transpired between them from the time he arrived at the Westmoreland home until the mishap on the McDougald Road are in sharp conflict.

Plaintiff's testimony, in summary, tends to show she did not telephone Harold Gregory or otherwise invite him to her home; that, upon his arrival, he stated her husband had told him "he had some whiskey there that he could have a drink of"; that, when she brought the whiskey to Harold Gregory, he poured out "an inch in a juice glass" and drank it while they watched television; that she loaned Harold Gregory one dollar to buy beer and handed him an extra dollar to buy two cans of beer for her; that, upon leaving to go for the beer, he did not take the two dollars, which were on the kitchen table; that, upon his return, he commented that he had forgotten the money and asked her if she wanted to go with him to get the beer; that she consented to go upon his assurance they would be gone only five or ten minutes; that she was in the car when Harold Gregory bought four cans of beer; that, upon his return to the car, he gave her an opened can of beer, kept an opened can and put the two unopened cans in the foot of the car; that, instead of taking her home, Harold Gregory drove out into the country under the pretext of showing her where his girl lived and ignored her repeated requests that he take her home; that, after he had turned off the highway and stopped the car, he made an improper proposal to her, which she indignantly refused and demanded that he take her home; that there was no "kissing and petting" there or elsewhere; that she did not sit "real close up to (him)" at any time while riding with him; that, on their return to Lillington, Harold Gregory drove between 60 and 65 miles an hour, around curves, on the wrong side of the road; that she repeatedly told him to slow down and drive on his side of the road but did not physically interfere with him in any way; that she knew he had had a drink when she left her house with him to go and purchase beer and that thereafter he had a can of beer but "(i)t did not appear to (her) then he was under the influence of anything that he had been drinking."

Harold Gregory's testimony, in summary, tends to show he went to plaintiff's home, in response to her telephone request, and upon arrival was invited into her house and given a drink of whiskey; that she gave him money with which to go and buy beer; that he went and bought the beer and upon his return he and plaintiff drank beer at the Westmoreland house; that she then went with him to buy more beer; that after this second purchase of beer he drove several miles, she "sitting over real close" to him, and turned off the highway to a secluded spot known as "Hell's Half Acre," where they stayed some 50 minutes or more, drinking beer and "kissing and petting"; that, after these events, plaintiff asked him to take her home; that, on the way back to Lillington, plaintiff "was sitting

real close up to (him)"; that she made no objection or comment as to how he was driving; that he had had "one glass of whiskey and two beers"; that plaintiff, to the best of his knowledge, had had four cans of beer, three at the house (first purchase) and one after the second purchase was made; and that, just before they got to the curve where the car ran off the road, plaintiff "grabbed (him) and pulled (him) over and kissed (him)"; and that, when this occurred, he lost control of the car.

The investigating State Highway Patrolman, a witness for plaintiff, testified he talked with Harold Gregory when he arrived at the scene of the mishap. He referred to his opinion as "borderline" as to whether Harold Gregory at that time was under the influence of intoxicants. Harold Gregory was not charged with driving while under the influence of intoxicants but pleaded guilty to driving (1) in excess of 55 miles per hour and (2) on the wrong side of the road. On cross-examination, the Patrolman testified: "It was very obvious that this defendant (Harold Gregory) was drinking." Again: "It was very obvious to me that at least some of his faculties were impaired."

With reference to the contributory negligence issue, the court reviewed what plaintiff contended the evidence showed and then what defendants contended the evidence showed. Thereafter, the court defined, in general terms, the elements of contributory negligence. But the court did not instruct the jury as to what facts would constitute the basis for a finding that plaintiff was guilty of contributory negligence. In short, the legal task of applying the general law to the facts in evidence was committed to the jury.

With further reference to the contributory negligence issue, defendants submitted requests for special instructions as to the duty imposed by law upon a guest passenger. Whether the court should have given all or any of the requested instructions in the form submitted need not be decided. Whether a guest passenger is contributorily negligent is determinable in accordance with legal principles stated in *Bell v. Maxwell*, 246 N.C. 257, 98 S.E. 2d 33, and cases cited therein. In this connection, see *Dinkins v. Carlton, ante*, 137, 120 S.E. 2d 543. Examination of the charge discloses the court gave no instruction as to these legal principles. In view of defendants' plea of contributory negligence and the evidence tending to support said plea, we are constrained to hold that the failure to instruct, even in general terms, as to the legal principles applicable in determining whether plaintiff was guilty of contributory negligence was prejudicial error.

With reference to the fourth issue, whether Buddy Gregory was liable for the negligence, if any, of Harold Gregory, under the family

purpose doctrine, the court instructed the jury correctly, in general terms, as to the family purpose doctrine, and reviewed what plaintiff contended the evidence showed and then what defendants contended the evidence showed. However, the court failed to instruct the jury as to what facts would constitute a basis for a finding that Buddy Gregory was liable for the negligence, if any, of Harold Gregory, under the family purpose doctrine. We deem it unnecessary to review the sharply conflicting evidence relevant to this issue.

Under G.S. 1-180, the trial judge is required to relate and apply the law to the variant factual situations having support in the evidence. *Bank v. Phillips,* 236 N.C. 470, 73 S.E. 2d 323, and cases cited; *Harris v. Greyhound Corp.,* 243 N.C. 346, 351, 90 S.E. 2d 710; *Glenn v. Raleigh,* 246 N.C. 469, 478, 98 S.E. 2d 913; *Brooks v. Honeycutt,* 250 N.C. 179, 108 S.E. 2d 457; *Godwin v. Hinnant,* 250 N.C. 328, 108 S.E. 2d 658. He has ". . . the positive duty of instructing the jury as to the law upon all of the substantial features of the case." *Lewis v. Watson,* 229 N.C. 20, 23, 47 S.E. 2d 484; *Spencer v. Motor Co.,* 236 N.C. 239, 72 S.E. 2d 598; *Glenn v. Raleigh, supra.* Moreover, in the absence of request for special instructions, a failure to charge the law on the substantial features of the case arising on the evidence is prejudicial error. *Howard v. Carman,* 235 N.C. 289, 69 S.E. 2d 522; *Barnes v. Caulbourne,* 240 N.C. 721, 725, 83 S.E. 2d 898; *McNeill v. McDougald,* 242 N.C. 255, 87 S.E. 2d 502; *Williamson v. Clay,* 243 N.C. 337, 90 S.E. 2d 727.

On account of the court's failure to declare, explain and apply the law arising on the evidence as to all substantial features of the case, as required by G.S. 1-180, a new trial is awarded. See *Byrnes v. Ryck,* 254 N.C. 496, 119 S.E. 2d 391, and cases cited.

New trial.